(No. 14894.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD COURTNEY, Plaintiff in Error.

*Opinion filed February 21, 1923—Rehearing denied April 16, 1923.*

1. CRIMINAL LAW—*when defendant may be convicted as principal in attempted burglary.* A defendant may be convicted as principal in an attempted burglary where the evidence warrants the conclusion that he was the look-out on the outside of the building while others were attempting to commit the burglary at the rear entrance and that he was aiding, advising and assisting in the attempted burglary.

2. SAME—*when fact that court appointed defendant's counsel to represent co-defendant is not fatal.* A defendant cannot successfully object, on review, that the trial court erred in appointing his counsel to represent a co-defendant whose lawyer was absent and who had asked for a continuance, where there is no showing that such defendant was prejudiced by being tried with his co-defendant.

3. SAME—*when admission of record under former indictment is not ground for reversal.* Error in admitting in evidence an incomplete record of the proceedings under a former indictment of the defendant for burglary for the purpose of affecting the credibility of his testimony is not ground for reversal, where the judgment of conviction is so well sustained by other competent evidence that the error could not have affected the verdict. (*People* v. *Andrae,* 295 Ill. 445, distinguished.)

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HARRY B. MILLER, Judge, presiding.

CHARLES WALDMAN, and W. W. O'BRIEN, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAS. B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Edward Courtney, was indicted, tried and convicted in the criminal court of Cook county, jointly with James McDonough, for the crime of attempted burglary and was sentenced to the penitentiary. This writ of error was sued out by Courtney for a review of the record.

On April 6, 1921, Patrick Flannigan, who was the proprietor of a soft drink parlor at No. 3700 Cottage Grove avenue, in Chicago, was informed that an attempt would be made to burglarize his place of business that night. He notified the police, and sergeants Lavin, Hogan and Nolan and officer Denman went to the place after midnight and remained until Flannigan turned out the lights and closed his place of business, at one o'clock. Nolan and Lavin were stationed inside, at the back door. Hogan and Denman stationed themselves on the inside at the front door. The building is located on the southwest corner of Thirty-seventh street and Cottage Grove avenue. It has twenty feet of windows on Cottage Grove avenue and fifteen feet

of windows off from Cottage Grove avenue, extending west on Thirty-seventh street. The entrance is exactly on the corner of Thirty-seventh street and Cottage Grove avenue. It also has a side entrance on Thirty-seventh street thirty-five feet west of Cottage Grove avenue, and also a rear entrance about four feet wide near the center of the building. The rear entrance cannot be seen from either Thirty-seventh street or Cottage Grove avenue. There is a passageway from Thirty-seventh street to the rear entrance. Three of the officers, Denman, Nolan and Lavin, testified on the trial. The substance of Denman's testimony, who was at the front of the building, is the following: It was dark on the inside but he had a clear vision from the inside out, an electric light being directly across the street. About fifty minutes after the saloon closed, an automobile drove up and he saw plaintiff in error walk over to it and hold a conversation with its occupants. The automobile then pulled out of his line of vision and plaintiff in error started traveling up and down Thirty-seventh street from Cottage Grove avenue and made the trip at least three times. He would walk west on the same side as the building and out of the witness' sight, then would walk back east again and look around the corner and stand around there a while. A police officer on the outside came there to pull the box, and Courtney immediately turned and walked west and stood out of sight while the officer, after pulling the box, conversed for a couple of minutes with another officer who came up. After the officers left, Courtney came back on his beat. Nolan then came from the back of the room and informed the witness that they were working on the back door. The witness heard the noise of working on the back door,—hammering, squeaking and sliding of metal over metal. Hogan, Nolan and the witness then went out of the side door, and as they came out Courtney passed them, and the witness said, "There is one of them! Grab him!" Nolan grabbed Courtney and then they noticed somebody

at the rear passageway entrance, and they ran to it and began shooting. The witness ran into the passageway but could not see anybody in it and then went down in the basement, which was dark. On using his flashlight he discovered McDonough up in one corner behind a pair of steps and ordered him to throw up his hands and come out or he would kill him. McDonough asked him to not shoot. They searched McDonough but found no weapons. On looking around the witness found a revolver near the sill of the door, which was loaded. The officers also found a "jimmy" about ten feet back of the door. They took it and fitted it in the marks on the back door and it fitted exactly. The door was a big, heavy door and had a coat of iron or steel on the outside of it. The jimmy had been used to pry open the door and there were several marks on the door just the size of the point of the jimmy. On coming out on the street again the witness noticed the same automobile make its tour around to Thirty-seventh street and start towards them, and all at once it turned and started on Cottage Grove and went north at a good rate of speed. The witness had known Courtney about three months. The officers took the prisoners to the police station, and the witness said to Courtney, "You knew that we were on the twelve o'clock watch, and that if anybody ran into that it would be us." Courtney replied, "I don't know why I did it." They then asked him who else was with him, and he replied, "Well, a fellow by the name of Smith and a fellow by the name of Burns." Courtney said he did not know where Smith and Burns lived; that he had just met them for the first time; that they needed a man to fill in and they called him up and he met them and was introduced to them. The officers also found a loaded revolver upon Courtney.

Nolan and Lavin corroborated Denman in his testimony. They saw the same automobile circle around the place several times. They saw Courtney pass up and down Thirty-

seventh street several times. They had both known Court-
ney for some time before that. They also had previously
known McDonough, whom Courtney had referred to as
Burns, and when they told Courtney that his name was
"Sox" McDonough and not Burns, he replied, "You didn't
want me to go and tell his name, did you?" They also
found that the jimmy had torn up dirt when it was thrown
upon the ground and that the dirt was freshly torn up,
and they recognized McDonough as one of the men whose
movements up and down Thirty-seventh street they had
been watching during the time the attempt was being made
to open the door. They also saw Courtney have communi-
cation with a man in the back passageway every time he
came west to the back entrance, and that the work on the
door would cease when he was at the entrance to the pas-
sageway and would begin again when he would walk up
towards Cottage Grove avenue.

Plaintiff in error testified in his own behalf that on
the night he was arrested he met a girl at Thirty-ninth
street who lived at Thirty-third street and Cottage Grove
avenue; that they attended several cabarets and chop suey
places, and left a chop suey place about 1:35 A. M.; that
he walked with the girl to Thirty-seventh street and Cot-
tage Grove avenue and put her on a street car there; that
he then walked to Cottage Grove avenue, and while walk-
ing along the street, going south, about three doors from
Flannigan's place, he heard two shots and turned around
and officers Nolan and Hogan arrested him; that they
searched him but did not find anything, and that he then
gave them the revolver that he had on him, which he had
bought that afternoon because he was going to work on
the sanitary police force; that he did not know McDon-
ough and denied making all the statements to the officers
that they testified to and denied all knowledge or connec-
tion with the burglary; that when he went to the police
station with the officers they asked him a lot of questions,

and when he told them he did not know anything about the burglary they went after him with a crow-bar and beat him in the eye and tore his pants; that the girl that was with him on that evening was then in Duluth or Minneapolis,—he did not know which.

William Finucane testified that he was a police marshal of the sanitary district; that he had known plaintiff in error all his life, and that he had seen him the first week in April with reference to a position on the sanitary district police force. Another witness testified that Courtney had a good reputation in the community in which he lived, as a law-abiding citizen.

It is the contention of plaintiff in error that the evidence fails to disclose any overt act on his part toward the commission of the crime of attempted burglary. The evidence clearly warrants the conclusion that he was the look-out for the parties who were attempting to commit the burglary at the rear entrance of the building, and that he was aiding, advising and assisting in the attempted burglary. He was therefore, in law, a principal in the commission of the crime and was legally and properly convicted for the attempted burglary. *People* v. *Marx,* 291 Ill. 40; *People* v. *Allegretti,* id. 364.

On the trial of the case McDonough made the claim that his lawyer was absent and sick and not able to appear for him in the case and asked for a continuance for a week so that his lawyer might appear in the trial. The court refused McDonough's request and appointed the lawyer of plaintiff in error to also represent McDonough in the trial. The attorney of plaintiff in error objected on the ground that their defenses were inconsistent, but the court overruled all of his objections and refused the request to appoint another attorney to represent McDonough. This action of the court was very arbitrary. If there were a showing in the record that plaintiff in error was prejudiced by such ruling

we would be disposed to regard such action as reversible error. There is no showing in this record that plaintiff in error was prejudiced by such ruling or that a different result would have been probable had the court ruled otherwise.

It is also contended that the court erred in admitting an incomplete record of proceedings against plaintiff in error under an indictment charging burglary. This contention is based upon the fact that the record does not show any conviction of him or any plea of guilty. The record furnished no evidence whatever that the defendant was convicted of burglary or that he pleaded guilty to such charge, and the court erred in admitting it in evidence. This court held in the case of *People* v. *Andrae,* 295 Ill. 445, that a record is admissible for the purpose of affecting the credibility of the testimony of a defendant in a murder trial where it shows that he had been previously tried on a charge of burglary and found guilty, even though no sentence was pronounced, where such record also shows that after his motion for a new trial was denied defendant filed a plea for release on probation and an order releasing him on probation was entered. That case is no authority for the admission of the incomplete record aforesaid. But the condition of the evidence in this case is such as to leave no reasonable doubt of the guilt of plaintiff in error. His testimony was of a character that tended to discredit him in itself. No other verdict of the jury would have been reasonably possible if the erroneous evidence had been excluded, and no reversible error has been committed by the court.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*