## STATE v. GEORGE MARTINEAU.

101 N. W. (2d) 410.

February 19, 1960—No. 37,637.

*George Martineau,* pro se, for relator.

*Miles Lord,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent.

*Maynard E. Pirsig,* amicus curiae.

NELSON, JUSTICE.

Writ of error issued upon petition of George Franklin Martineau alleging prejudicial denial of his rights as defendant by his being forced to submit to a single trial, jointly with a codefendant, under two

informations charging separate and distinct crimes of assault in the second degree and grand larceny in the first degree.

On February 13, 1958, two informations were filed charging relator and one Andrew Leo Oksanen with assault in the second degree and grand larceny in the first degree. Defendant was jointly arraigned with Oksanen and plead not guilty. Without formal order of consolidation both defendants were tried jointly on both charges in one trial. A separate verdict of guilty was returned as to each defendant on each charge. Relator received a sentence of 5 years for the assault and a sentence of not less than 10 years and not more than 40 years for the larceny, this latter sentence to run consecutively and not concurrently with any other sentence. The relator was also charged with two prior convictions to which he plead guilty. These felonies had been committed when he was 17 and 20. The application of M. S. A. 610.28 accounts for the severity of the sentences.

After the sentences were imposed, the sentencing judge filed an order limiting the sentence for grand larceny in the first degree to not more than 20 years, making the total term not more than 25 years including the 5-year sentence.

Relator was arrested on February 5, 1958, at Duluth and taken to the Carlton County jail at Carlton by the sheriff of that county. During the early hours of February 5 relator, after drinking heavily in a Duluth tavern, rode in the back seat of a car driven by Oksanen toward Wrenshall in the vicinity of Duluth, and on the way they sideswiped another car driven by one Fritz Karjala. Karjala claimed that both occupants of the car beat him at this point, which gave rise to the charges of assault in the second degree. There appears to be no dispute that Karjala was beaten by someone, but relator contends that he was sleeping in the back seat of the car at that time and knew nothing of the incident. Karjala's car was pushed into a ditch along the road after which Oksanen drove off. Oksanen admitted having assaulted Karjala, but he has also made the statement that relator had no part in it as he was asleep at the time.

Later that same morning the Wrenshall school was broken into and looted, which gave rise to the charges of grand larceny in the first

degree for stealing property of the value of $42.16 in cash and a sweater.

The state admits that there was a consolidation for trial of the informations charging two separate crimes which occurred at two separate and distinct times and places without any motion or order being made relative to consolidation; that the court appointed one counsel to defend both defendants for both crimes. Relator contends that because of a conflict of interest in so far as the two defendants were concerned the trial court should not have appointed one counsel for both without ordering separate trials.

Relator has filed with this court a copy of an unsigned confession by Oksanen and a later affidavit by him. These state that relator knew nothing of the crimes and was in a drunken stupor in the rear seat of the car both at the time of the assault and when the break-in occurred. Oksanen's affidavit states:

"That the Court appointed counsel, Donald Dieson, was requested by both George F. Martineau and Myself to have seperate [sic] trials so that I could testify at George F. Martineaus trial, however I and George F. Martineau were tried jointly as the Attorney stated such was nessary [sic] to save on expenses—

"That the Court appointed Attorney argued against my taking the stand in behalf of George F. Martineau, * * *."

Oksanen further stated that he stood ready to testify that Martineau was not a party to the commission of either offense. The transcript of the trial so far as it is before us shows that he consistently stated that relator was not a participant in either of the crimes charged. Oksanen further states in his affidavit that he would have testified that he gave relator part of the loot from the schoolhouse thus connecting relator with the larceny at the time of arrest. Relator claims that these facts would have been in evidence but for the fact that counsel, who had been appointed to represent both defendants, advised against Oksanen's taking the stand.

It can of course be argued that counsel's decision that Oksanen not take the stand in his own defense was in his best interest; but if

Oksanen would have testified as he has indicated, that advice was against relator's interest. It is argued on the part of the state that it was not the duty of counsel to seek to pin all the responsibility on Oksanen in order to exculpate relator. However, from relator's standpoint, it was counsel's duty to attempt to relieve relator, whom counsel was equally appointed to defend, from supposedly unfounded charges.

The foregoing situation shows the conflict of interests which interfered with defense counsel's doing his full duty to either of his clients in the face of consolidation for trial of the two cases. It is elementary that separate trials were necessary in order that counsel might provide the full defense to which each defendant was entitled without being hampered by having to consider conflicting interests.

The evidence relating to the grand larceny is entirely circumstantial. The most damaging evidence is that relator was in possession of stolen goods and attempted to dispose of a part. This situation has been explained by Oksanen. When he saw they were about to be arrested he awakened relator and impressed upon him the necessity of assistance in getting rid of the loot taken from the school. Thus it was made to appear that the relator was possessed of at least a part of the stolen goods. Had Oksanen been called to testify at a separate trial of relator, this evidence might well have had the effect of rebutting the inferences that arose from the possession of the loot.

A close inspection of Karjala's testimony to support the assault charge gives a clear impression of extreme confusion on his part. Karjala's explanation of his identification of the men who accosted him is not what might be termed convincing, and at times when asked if Martineau hit him he answered in the negative.

Giving due consideration to Karjala's limited command of English, it still does not explain the inconsistencies and discrepancies involved in his testimony. These might well have been cleared up had Oksanen taken the witness stand. As the record stands, it does not convincingly connect relator with the assault. A state's witness who first saw Karjala after the beating testified that Karjala had not mentioned being rendered unconscious although Karjala testified at the trial repeatedly that he had been unconscious.

338

William E. Johnson, criminal investigator for the St. Louis County Sheriff's Office, testified as follows:

"Q During the course of talking to him about another matter, Mr. Johnson, did Mr. Oksanen volunteer information to you concerning this assault case that we are trying today and the breaking-in of the Wrenshall school?

"A He did state that he, en route in his travels from Duluth to Wrenshall, had assaulted an individual. At that time he stated he had another party in the car who he knew was Martineau but he also stated that a party was asleep in the backseat of the car.

\* \* \* \* \*

"Q From what you recall on this statement given by Mr. Oksanen, it was his statement to the effect that Mr. Martineau was asleep in the car all of the time?

"A That is right."

The other criminal investigator for St. Louis County Sheriff's Office, Fred Wallin, testified as follows:

"Q What did he [Oksanen] have to say concerning Martineau as to where he was at the time of the assault and school break-in?

"A He was sleeping in the car."

Relator contends that he did not want to be tried jointly with Oksanen but that the court-appointed counsel, in cooperation with county officials and in an effort to keep trial expenses at a minimum, allowed relator to be tried along with Oksanen even though Oksanen had made statements admitting his guilt and exculpating relator.

What might well have proven a weakness of the cases against the relator was never presented to the jury. Apparently relator sensed something of his position when he gave a negative response to the question of the trial court as to whether he felt he had been afforded a fair trial.

We do not conclude that the evidence was not adequate to sustain a verdict if the case had been separately and properly tried; the point is that here an otherwise inconclusive case emphasizes the prejudicial character of the errors committed.

It is apparent that relator has been deprived of adequate representation because defense counsel, representing both defendants in a single trial, could make no decision of consequence without harming one or the other of the defendants. If the failure of Oksanen to take the stand was due to the decision of defense counsel, which it apparently was, that decision was highly prejudicial to relator.

An important question which must be answered is whether relator was entitled to have the distinctly independent crimes of larceny and assault tried separately. It is elementary that had these offenses been separately tried evidence of one would not have been admissible in proof of the other. For the court to have admitted such evidence over objection would have constituted reversible error. The prejudice to relator here is therefore self-evident. The trial court failed to instruct the jury that evidence as to one of the crimes should not be considered as having any weight in determining whether the other crime was committed. The unfairness of the proceeding has been aggravated in that respect.

We think relator was also prejudiced by the failure to demand separate trials for each defendant since Oksanen's trial would no doubt have taken place first and Oksanen would then have been available to testify on behalf of relator without prejudice to himself. No doubt defense counsel felt under the necessity of advising Oksanen not to testify on relator's behalf because of prejudice to himself in doing so, but had such testimony been given it might have meant the difference between conviction and acquittal to relator.

The use of affidavits to show a conflict of interest in the trial of a criminal case finds support in State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155, and State v. Wesson, 249 Minn. 153, 81 N. W. (2d) 625.

Clearly where counsel has acted for codefendants having a conflict of interests, it becomes the responsibility of the courts to see that the injustice is corrected by granting a new trial.

■ M. S. A. 611.07, subd. 1, provides for court-appointed counsel as follows:

"When a defendant shall be arraigned upon indictment or informa-

tion for any felony or gross misdemeanor and shall request the court to appoint counsel to assist in his defense, and satisfied it by his own oath or other required proof that he is unable, by reason of poverty, to procure counsel, the court shall appoint counsel, not exceeding two, for such defendant, to be paid, upon his order, by the county in which the indictment was found. * * *"

Minn. Const. art. 1, § 6, guarantees to a defendant in a criminal action the following rights:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial * * * and to have the assistance of counsel in his defense."

The purpose of the right to have counsel appointed as provided in § 611.07 and the right to be represented by counsel as provided by the state and Federal constitutions is to protect the accused from a conviction resulting from his own ignorance of his legal and constitutional rights and this right to counsel cannot be nullified by appointment of, or representation by, counsel who merely furnishes perfunctory or casual representation. State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723; State ex rel. Baker v. Utecht, 221 Minn. 145, 21 N. W. (2d) 328; Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. ed. 158.

While this court has not directly passed upon a situation involving a conflict of interests such as the instant case, other courts including the United States Supreme Court have frequently held that it constitutes prejudice and reversible error for a trial court to appoint the same counsel for two or more defendants at the same trial when the separate defenses of each of the defendants are inconsistent. In Glasser v. United States, 315 U. S. 60, 70, 62 S. Ct. 457, 465, 86 L. ed. 680, 699, it was held:

"* * * that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired."

The court in People v. Bopp, 279 Ill. 184, 191, 116 N. E. 679, 682, stated:

"* * * The defenses of these two defendants were not the same. Each was an alibi, but each was dependent upon different testimony from the other. It might well be that testimony tending to exculpate one would tend to inculpate the other."

The California Supreme Court in People v. Robinson, 42 Cal. (2d) 741, 269 P. (2d) 6, considered the case of a lawyer representing two clients in a criminal action where there was a conflict of interests and held this was grounds for reversal of conviction. See, McElroy v. United States, 164 U. S. 76, 17 S. Ct. 31, 41 L. ed. 355; Cataneo v. United States (4 Cir.) 167 F. (2d) 820; State v. Agnew, 7 N. J. Misc. 915, 147 A. 485; Commonwealth v. Tracey, 137 Pa. Super. 221, 8 A. (2d) 622; State v. Stago, 82 Ariz. 285, 312 P. (2d) 160; People v. Courtney, 307 Ill. 441, 138 N. E. 857; People v. Rose, 348 Ill. 214, 180 N. E. 791; People v. Rocco, 209 Cal. 68, 285 P. 704; Abraham v. State, 228 Ind. 179, 91 N. E. (2d) 358; State v. Dangelo, 182 Iowa 1253, 166 N. W. 587; People v. Morris, 3 Ill. (2d) 437, 121 N. E. (2d) 810; People v. Frank, 130 Cal. App. 212, 19 P. (2d) 850; State ex rel. Favors v. Tucker, 143 W. Va. 130, 100 S. E. (2d) 411; People v. Lanigan, 22 Cal. (2d) 569, 140 P. (2d) 24, 148 A. L. R. 176, with Annotation at 183.

Under the authorities cited, it seems clear that under the above Minnesota statute the conflict of interests shown here furnishes grounds for a new trial.

Minnesota has applied the rule that evidence which in any manner tends to show that defendant has committed a crime independent of that for which he is on trial is ordinarily inadmissible. State v. DePauw, 246 Minn. 91, 74 N. W. (2d) 297; State v. Gavle, 234 Minn. 186, 48 N. W. (2d) 44.

This court had occasion to deal with the question as to when incompetence of counsel will be grounds for a new trial in State ex rel. Butler v. Swenson, 243 Minn. 24, 28, 66 N. W. (2d) 1, 4, wherein it was said:

"It is the well-settled law of this state that a *new trial* may be

granted in exceptional cases where the accused was deprived of a fair trial because of the misconduct, fraud, or incompetence of his attorney. State v. Lindstrom, 180 Minn. 435, 231 N. W. 12; State v. Gleeman, 170 Minn. 197, 212 N. W. 203."

The Lindstrom and Gleeman cases dealt with situations where defendant was represented by counsel of his own choosing. Neither case dealt directly with a conflict of interests as presented in this case. Apparently no Minnesota cases have been found involving a problem of conflict of interests similar to this.

Regarding joint trial, § 631.03 provides in part:

"When two or more defendants shall be jointly indicted for a felony, any defendant who shall require it shall be tried separately."

State v. Thaden, 43 Minn. 325, 326, 45 N. W. 614, 615, construing that section stated:

"* * * By the common law, the court might grant or refuse separate trials in its discretion. This is so far modified by our statute (Gen. St. 1878, c. 114, § 6) that the defendant is entitled to it as a matter of right if he require it, but the court may also so direct, on the application of the state."

Had relator's counsel made the proper motion, the court would have been bound to grant separate trials.

Relator contends that he was in other respects denied a fair trial. Since a new trial is being granted, it would serve no purpose to consider these contentions.

■ We reach the conclusion that as the facts existed with respect to the defenses of the codefendants here consolidation of the informations charging separate crimes for a single trial of both defendants in the face of conflicting interests constituted a denial to relator of his statutory rights as defendant; of due process under U. S. Const. Amend. XIV; and of right to counsel under Minn. Const. art. 1, § 6.

Reversed and a new trial granted on each of the two informations filed against relator.