## STATE v. HENRY PRICKETT.[1]

January 11, 1946.

No. 34,086.

See, 217 Minn. 629, 15 N. W. (2d) 95.

[1]Reported in 21 N. W. (2d) 474.

*Johanson & Winter, Clifford Schneller,* and *Forbes & Forbes,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Mandt Torrison,* Special Assistant Attorney General, and *R. N. Nelson,* County Attorney, for the State.

PETERSON, JUSTICE.

Defendant was convicted in the district court of illegally having in his possession one frog more than 150 frogs in violation of L. 1943, c. 621, § 1, and appeals. The statute is quoted in the opinion on the prior appeal. State v. Prickett, 217 Minn. 629, 15 N. W. (2d) 95.

The evidence is conclusive that defendant had in his possession in this state the number of frogs alleged; that the frogs were caught in the states of North Dakota and South Dakota and sold to one Steinhilber at his place of business in Fairmount, North Dakota, where they were loaded on a truck for transportation to Oshkosh, Wisconsin; and that at the time of his arrest defendant was driving the truck with the frogs on it in this state in interstate transportation from Fairmount to Oshkosh. The illegal possession charged consists of having the frogs on the truck while thus driving it. There was evidence that prior to defendant's departure from Fairmount several game wardens followed a black-panelled automobile truck from Minnesota across the North Dakota state line to Steinhilber's place of business in Fairmount, where several sacks were unloaded; but there was no evidence to show what the sacks contained, much less that they contained frogs caught in Minnesota or that the contents of the sacks were placed on the truck driven by defendant from Fairmount en route to Oshkosh.

On the trial, as here, defendant took the position that the statute by its terms applies only to "native frogs," which he contends are frogs native to the state of Minnesota in the sense that they were produced and caught here, and that adopting this view we determined on the prior appeal that the statute did not apply to frogs "caught and bought" in North Dakota. In support of defendant's

view, that the statute has no application to frogs caught and bought in other states, cases have been cited holding that the word "native" relates to the state of the statute's enactment. Commonwealth v. Petranich, 183 Mass. 217, 66 N. E. 807 ("native wines") ; State v. Pantolome, 33 Del. (3 W. W. Harr.) 255, 138 A. 401 ("native fruits"). To these might be added our own decision in Oken v. Johnson, 160 Minn. 217, 199 N. W. 910, holding that ordinarily the word "native" refers to place of birth, but that the word may be used in a statute with a different meaning. See, In re Estate of Eklund, 174 Minn. 28, 218 N. W. 235.

The state made two contentions. First, it in effect admits that the statute applies only to "native frogs," but contends that the word "native" refers not to the state, but to the area where frogs of the kind native to this state are indigenous, and that so construed the statute applies to frogs produced and caught in North Dakota and South Dakota as well as Minnesota, because the same species of frogs are native to all three states. Second, it contends that the last sentence of the section, under which defendant is charged, makes illegal the possession of any "frogs" in excess of 150 in number, regardless of where they were caught and bought, and that the use of the word "frogs" without the word "native" preceding it evinces such a meaning. The case of State v. Shattuck, 96 Minn. 45, 104 N. W. 719, 6 Ann. Cas. 934, is cited to support this view. That case holds that a state statute may lawfully prohibit the possession within the state of the *dead bodies* of game taken in other states and that whether a statute has that effect is one of statutory construction. We construed the statute there involved as making it unlawful to have in possession the dead bodies of game taken in other states, but pointed out by citation of cases from other states that a statute does not have that effect unless it so provides. Here, the precise question in this respect is whether the provisions of this particular statute relative to unlawful possession in this state of frogs applies to those caught and bought in other states.

When the case was here on the prior appeal, we held (1) that defendant was entitled as a matter of law on appeal from justice court to the district court to withdraw the plea of guilty entered before the justice and to enter a plea of not guilty in the district court; and (2), aside from defendant's right to change this plea on the appeal, that the trial court abused its discretion in denying him leave on the appeal to withdraw the plea of guilty before the justice and to enter a plea of not guilty in district court. We held that defendant had a good defense on the "merits" because of the fact that the statute had no application to frogs caught and bought in another state and possessed here in interstate transportation, and that it was an abuse of discretion not to permit him to assert the defense. We said (217 Minn. 629, 632, 15 N. W. [2d] 95, 97):

"But the record in this case is convincing that this 18-year-old truck driver was entitled to withdraw his plea of guilty entered in the justice court and plead to the merits. It is apparent that L. 1943, c. 621, was not intended to reach frogs lawfully caught and bought in North Dakota and which were in interstate commerce en route to Oshkosh, Wisconsin. The statute referred to does not place on the accused the burden of proving that the frogs in his possession were lawfully taken. Chapter 621 does not require the trucker of frogs to have a license to transport them on the highways of this state."

The state challenges the correctness of these views, but they state the law of the case and control decision here. Where a question of law is decided on appeal, it becomes the law of the case, which the trial court is bound to follow on a new trial and the appellate court will not reëxamine on a subsequent appeal. State v. Mims, 26 Minn. 183, 190, 2 N. W. 683, 494; 1 Dunnell, Dig. & Supp. § 398. The rule is not limited to any particular kind of legal questions. The construction of a statute on appeal becomes the law of the case and controls decision in all subsequent proceedings. Terryll v. City of Faribault, 84 Minn. 341, 87 N. W. 917; Zurich General Accident & Liability Ins. Co. v. O'Keefe (8 Cir.) 64 F. (2d) 768;

Arlington Hotel Co. v. Fant, 176 Ark. 613, 4 S. W. (2d) 7; City of Oakland v. Buteau, 219 Cal. 745, 29 P. (2d) 177; Utley v. City of St. Petersburg, 121 Fla. 268, 163 So. 523; Postlewaite v. Hasse, 205 Ind. 396, 186 N. E. 761; Pulp Wood Co. v. Green Bay P. & F. Co. 168 Wis. 400, 170 N. W. 230. There are some exceptions to the rule, but no question is involved here whether the instant case comes within a recognized exception. The determination on the former appeal, that the statute has no application to frogs caught and bought in other states and possessed within the state while being transported in interstate commerce, is the law of the case and compels decision that defendant is entitled to an acquittal. No useful purpose would be served by a new trial, because another trial would establish only the same facts and lead to the same result.

Decision that defendant is entitled to an acquittal on the ground mentioned ends the case and makes unnecessary consideration of the other questions presented.

The questions of law raised on this appeal, other than the one relating to the law of the case, are not likely to arise again, because the statute was amended by L. 1945, c. 248, § 5 (p. 420, 101.44), subsequent to our prior decision in this case.

Reversed with directions to render a judgment of acquittal.