# STATE v. REGINA SCHABERT.[1]

July 5, 1946.

No. 34,224.

See, 218 Minn. 1, 15 N. W. (2d) 585.

*Arthur E. Arntson* and *L. J. Kilbride,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *David L. Grannis, Jr.,* County Attorney, and *Vance B. Grannis,* Assistant County Attorney, for the State.

[1]Reported in 24 N. W. (2d) 846.

MATSON, JUSTICE.

Defendant, convicted of murder in the second degree, appeals from an order denying her motion for a new trial. This is defendant's second appeal. Our former opinion, reported in State v. Schabert, 218 Minn. 1, 15 N. W. (2d) 585, was based on a record limited to defendant's testimony, certain exhibits, the county attorney's argument, and the court's charge.

Regina Schabert was arrested about four o'clock in the morning of March 5, 1942, and lodged in the Dakota county jail at Hastings upon the suspicion of having killed her husband, Frank Schabert. In addition to, and as a qualification of, the necessarily restricted statement of facts given in our former opinion, we now have the benefit of evidence presented by both the state and defendant. Between the time of her arrest on March 5 and her arraignment on March 7, two different confessions were made by defendant, namely, an oral statement made on March 5 (alleged by defendant to have been reduced to writing and later signed by her) to the effect that in attempting to wrest the gun from her husband in a scuffle he was accidentally shot, and a second confession made on March 6, reduced to writing and signed by defendant, wherein she admitted having shot her husband while he was asleep on the bed. The first confession was substantially in conformity with her testimony on the witness stand. Defendant's assignment of errors raised questions (1) as to the admissibility of the second confession and the oral testimony thereto pertaining; (2) whether the trial court erred in refusing to instruct the jury that if it found defendant to be of the actual or proved mental age of eight years and ten months (as distinguished from her physical or chronological age of 28 years) then she is presumed to be incapable of committing a crime; and (3) that the state had failed to adduce evidence showing the commission of a public offense as determined by the jury's verdict.

■ In State v. Prickett, 221 Minn. 179, 182, 21 N. W. (2d) 474, 475, we held:

"* * * Where a question of law is decided on appeal, it becomes the law of the case, which the trial court is bound to follow on a new trial and the appellate court will not reëxamine on a subsequent appeal. * * * The rule is not limited to any particular kind of legal questions."

See, Nees v. Minneapolis St. Ry. Co. 221 Minn. 396, 22 N. W. (2d) 164; Goldman v. Christy, 165 Minn. 237, 206 N. W. 392; 1 Dunnell, Dig. & Supp. § 398.

Defendant challenges the admissibility of the second confession on the ground that it was obtained through psychological pressure upon her while she was detained incommunicado. No claim is made that she was tortured physically except that it is alleged that she was kept awake by persistent questioning and felt sick and tired when she finally signed the document. We inquire whether defendant was in possession of her mental freedom to confess to, or deny, an alleged or suspected participation in the crime. Was the confession obtained by means of such pressure exerted upon accused as to affect its testimonial trustworthiness? Reduced to a common denominator: Was the confession in fact voluntary?

In conformity with our former opinion, the trial court, *out of the presence of the jury,* heard the pertinent evidence of both parties to determine whether such evidence presented a question of fact as to the voluntary nature of the confession. After having so determined that a question of fact was involved, the court admitted the second confession in evidence for the jury's consideration and placed before it the entire evidence as to both confessions. The jury was instructed to determine whether either or both confessions were defendant's free and voluntary act or acts, and was further told that, if found not to be voluntary as the act or acts of defendant's free will, they were not admissible as evidence and must be disregarded. The court further charged that, if voluntary, the confessions were to be given weight only to such an extent as the jury should deem them worthy of consideration. The charge specified that the jury, in determining whether the confession or

confessions were voluntary, should take into consideration (1) the fact that defendant was not arraigned before the court until March 7; (2) her mentality; (3) the manner in which she was questioned; (4) the opportunity or want of opportunity she enjoyed to confer with her parents, brothers, attorney, and her priest; (5) whether or not she was denied the right to consult an attorney of her own choice privately; and (6) that consideration should be given to all the circumstances under which the confession had been obtained or made. Clearly, the instructions of the court were in conformity with our former opinion and left to the jury the determination of the voluntary nature of defendant's confession or confessions and the weight and credibility to be attached thereto if found to be voluntary.

The confession, the admissibility of which is challenged, was properly admitted in evidence. Although the evidence was in conflict, there was ample evidence to sustain a finding that the confession was in fact voluntary. There was evidence from which the jury could find that accused had the opportunity to confer, and did confer, with her parents and her two brothers sometime between 5:30 and seven o'clock on the morning of March 5. There was direct testimony to this effect by the jailer and the wife of the sheriff. The jail register for visitors, which contained the signatures of defendant's father and mother (signed for both by the father) and her two brothers, showed the time of their visit to be at 5:20 o'clock on the morning of March 5. It is true that the date and time of the call are denied by her parents and her brother Sylvester, but after all it was for the jury to determine the actual facts under the conflicting evidence presented. Furthermore, the records of the telephone company indicated that the parents were notified of the tragedy by a telephone call made at 4:40 a. m. on March 5. Defendant's parents and her brothers, who resided on a farm approximately ten miles from Hastings, admitted that they left the farm and drove to town as quickly as they could after receiving the telephone call.

Police officer Yanz testified that on his way home from night duty, at about nine a. m. on March 5, he voluntarily called on Father Demetrius, defendant's priest, and told him of the tragedy and suggested that defendant might wish to see him. Father Demetrius, who remembered this call, was not sure of the date, but it was his opinion that it was on the day of the accident. Deputy sheriff Schneider declared that, in response to defendant's request, he telephoned to Father Demetrius on the morning of March 5, and this testimony was corroborated by the priest, who was again unable to fix the exact date. Father Demetrius recalled that he had visited accused, but he could not remember with certainty the date of his first visit.

Defendant's contention that she was denied the right to see her attorney is likewise refuted by competent testimony. She could have sent word through her parents or her brothers. Both the sheriff and his deputy, who denied that accused ever asked for an attorney, specifically testified that they had asked her, before the confession was signed, if she wanted an attorney and that she said "No." It also appears that she did have some means of communicating with her attorney, because he called on her shortly after noon on March 6 to prepare a petition for the appointment of a special administrator of her husband's estate. Unquestionably, there was competent and ample evidence upon which the jury could find that defendant was not held incommunicado from her family, her priest, or an attorney of her own choice. No purpose will be served by a detailed review of the evidence with respect to the allegation that she was persistently questioned in such a manner and under such circumstances as to deprive her of mental freedom to deny participation in the crime. Despite certain testimony in her behalf, there was other testimony ample to show that she was treated kindly, was given an opportunity to sleep or otherwise rest, and that she was not subjected either to prolonged or persistent questioning. There is no indication that her confession was induced by threat of harm, promise of favor, or reward by any per-

son in authority. Furthermore, her mental condition received fair and due consideration. The court in its charge to the jury said:

"Now, if you find from the evidence that the accused is of subnormal mentality and was kept in custody for an unreasonable time after arrest before arraignment, that is, before being brought into court, without communication with her parents, counsel, doctor or priest, whose presence she had requested and she was subjected to persistent questioning until a confession of guilt was obtained, you will disregard such confession or confessions so obtained."

■ Minn. St. 1941, § 610.08 (Mason St. 1927, § 9913), provides:

"Save as hereinafter specified, every person is presumed to be responsible for his acts, and the burden of rebutting such presumption is upon him. Children under the age of seven years, idiots, imbeciles, lunatics, or insane persons are incapable of committing crime. Children of seven, and under 12, years of age are presumed incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong."

Defendant alleges that the court erred in refusing, under the above section, to instruct the jury as follows:

"If you believe from the evidence that at the time Frank Schabert met his death that the defendant was of the mental age of eight years and ten months then she is presumed incapable of committing a crime."

We find no error. Obviously, the rebuttable statutory presumption that children of seven and under 12 years of age are incapable of committing crime refers not to the mental age, but to the physical or chronological age, and does not extend to a person of the physical age of 12 or more years even though such person is in fact of a mental age of less than 12 years. The language of the statute is plain and unequivocal. The first sentence thereof provides that every "person" is presumed responsible for his acts except as there-

inafter specified. If the legislature in specifying the exception pertaining to "children" had intended thereby to include adult persons, or any person, of the physical age of 12 years or over, no doubt specific reference would have been made to the mental age, and the word "person" would have been used throughout. In construing a similar statute, the supreme court of Massachusetts in Commonwealth v. Trippi, 268 Mass. 227, 230, 231, 167 N. E. 354, 356, said:

"* .* * This rebuttable presumption, however, refers to the physical age of the child and does not extend to one beyond the age of fourteen years. * * *

"* * * The trial judge rightly ruled that the mere establishment of the fact that the defendant had a mental age of a child of thirteen would not entitle him to the benefit of the presumption that he was incapable of forming a criminal intent."

In applying the New Jersey rule that between the ages of seven and 14 years an infant shall be presumed to be incapable of committing crime, the court in State v. Schilling, 95 N. J. L. 145, 148, 112 A. 400, 402, involving a defendant of the physical age of 28 years and a mental age of 11 years, said:

"* * * There is a vast difference between a child at the age of eleven years and that of a man of twenty-eight, and while perhaps there is a presumption that an infant of tender years is incapable of committing a crime, that presumption does not extend to one of advanced years, requiring the state to rebut it. When a man reaches manhood the presumption is that he possesses the ordinary mental capacity normally pertaining to his age, and it is for him to overcome that presumption, and whether he has done so is for the jury to determine. *The presumption of the lack of power of thought and capacity in favor of a child is due more to the number of years he has lived than to the character of the development of his mind, and it is a merciful rule established by the courts due to his tender years, but that reason does not apply when he comes to manhood.*" (Italics supplied.)

See, People v. Day, 199 Cal. 78, 87, 248 P. 250, 253; State v. Kelsie, 93 Vt. 450, 452, 108 A. 391, 392; 22 C. J. S., Criminal Law, § 55.

■ Defendant's assignment of error that the state failed to adduce evidence showing the commission of a public offense is without merit. We need not consider the effect or weight of the evidence apart from the confession, in that the latter was admissible and was submitted to the jury under proper instructions. It was established that the offense charged had in fact been committed. As already noted, there was competent evidence for the jury to find that the confession was voluntary, and it was for the jury to determine its weight and credibility. In the light of the verdict of the jury, we must take the most favorable view of the state's testimony of which it is reasonably susceptible, and it must be assumed that the jury believed the state's testimony and disbelieved that which contradicted it. Firotto v. United States (8 Cir.) 124 F. (2d) 532; Marx v. United States (8 Cir.) 86 F. (2d) 245; Lennon v. United States (8 Cir.) 20 F. (2d) 490; Bianchi v. State, 169 Wis. 75, 171 N. W. 639; Bussard v. State, 233 Wis. 11, 288 N. W. 187. Taking the evidence as a whole, we find that it was both competent and sufficient to sustain, beyond a reasonable doubt, defendant's conviction.

Affirmed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.