[Crim. No. 745. Fifth Dist. Aug. 28, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID F. SAVALA, Defendant and Appellant.

## COUNSEL

Jay W. Powell, under appointment by the Court of Appeal, and Dennis R. Scott for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Elliott D. McCarty, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GINSBURG, J.**\*—Appellant was convicted by a jury of violation of Penal Code section 459, burglary in the first degree. Three prior felony convictions were charged and admitted. He appeals upon numerous specifications of error.

The charge arose out of the burglary of a bar known as the Casa Del Rey during the night of August 14-15, 1967. The charge of first degree burglary was based upon an alleged assault upon the person of one Kenneth King during the course of the burglary.

Substantial evidence, unnecessary to detail here, showed that while appellant and another were in the process of burglarizing the bar they were

\*Assigned by the Chairman of the Judicial Council.

surprised by King. King resided on the premises, had been awakened by the sound of breaking glass, and had armed himself with a 14-inch knife. As he stepped into the bar from his adjoining bedroom, he saw a man trying to open the cash register. The man, appellant herein, ran towards King, who slashed him with the knife several times. Appellant went past King, ran around the end of the bar, then toward the middle of the room and out through the broken window.

■ Appellant's first specification of error lies in the admission into evidence of a statement taken from him by Sergeant Cunningham in the hospital approximately 36 hours after his arrest. The trial court impliedly found that appellant had been properly advised of his constitutional rights, and that he thereafter consented to talk with the officer. Although the appellant asserts that he was physically incapable of making a valid waiver, there were sufficient facts before the trial judge to permit him to conclude that the appellant made a knowing and intelligent waiver of his rights at a time when he was not mentally impaired.

In any event, the matter of appellant's physical condition was not raised in the trial court where it could have been completely explored, and consideration on appeal is, therefore, precluded. (*People* v. *Myers*, 262 Cal.App.2d 307, 310-311 [68 Cal.Rptr. 636]; *People* v. *De La Torre*, 263 Cal.App.2d 409, 413 [69 Cal.Rptr. 654].)

■ Appellant also contends that the trial court erred in receiving evidence of appellant's silence in response to accusatory statements during the course of the interrogation. Sergeant Cunningham testified that he first asked appellant if he had committed the burglary. Appellant said, "No." He then asked him how he was injured. Appellant stated that some men had jumped him from behind.

The sergeant then asked him two questions: (1) What his shirt was doing on the car at the point of entry to the bar, and (2) how he could explain his fingerprint on the window pane at the point of entry. Appellant was silent and gave no answer to either of these questions. There was no evidence offered at the trial as to the whereabouts of the shirt; there was other evidence showing that appellant's fingerprint was on the broken window.

Respondent contends that the appellant's silence was admissible as evidence of acquiescence of the accused in the truth of the implications of the questions, or of a consciousness of guilt. (See *People* v. *Abbott*, 47 Cal.2d 362, 373 [303 P.2d 730]; *People* v. *Simmons*, 28 Cal.2d 699, 712-713 [172 P.2d 18]; Evid. Code, § 1221; but see Evid. Code, § 1204.) Respondent further argues that once a proper foundation is laid by showing a waiver, the conduct of appellant thereafter (i.e., his silence) is admissible as well as his statements.

There are persuasive reasons for holding that an arrestee who has effectively waived his right to remain silent stands in the same position as he would if he did not have this right. Strong arguments can also be made for holding that a waiver, once specifically and effectively made, can only be revoked by an equally specific act.

This, however, is not the rule. In *Miranda* v. *Arizona,* 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 722-723, 86 S.Ct. 1602, 10 A.L.R.3d 974], the Supreme Court specifically states: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege. . . ." This language was adopted by our Supreme Court as part of the basis of its holding in the case of *People* v. *Fioritto,* 68 Cal.2d 714, 718 [68 Cal.Rptr. 817, 441 P.2d 625]. But even before *Miranda,* the courts of this state had held that silence after an arrest no longer justified an inference. In *People* v. *Maldonado,* 240 Cal.App.2d 812, 817 [50 Cal.Rptr. 45], the court said: "It would appear that as a development of the rule of *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], and the *Escobedo-Dorado* rule the silence of an accused in the face of an accusatory statement will no longer justify an inference adverse to him, thus doing away with a type of evidence of questionable validity and value." Likewise, in *People* v. *Cockrell,* 63 Cal.2d 659, 669-670 [47 Cal.Rptr. 788, 408 P.2d 116], the court says: "The rationale of *Griffin* implicitly proscribes drawing an inference adverse to the defendant from his failure to reply to an accusatory statement if the defendant was asserting his constitutional privilege against self-incrimination. Several lower federal court decisions have recognized the defendant's right to remain silent when under arrest *without an express claim of his privilege against self-incrimination.* [Citations.]" (Italics added.)

We are thus compelled by the later and controlling authorities to conclude that the silence of a suspect under arrest in reply to accusatory statements is an invocation of the privilege against self-incrimination whenever made, and is not admissible against him even after a previously effective waiver of his *Miranda* rights. The court, therefore, committed error in the instant case in admitting the testimony of Sergeant Cunningham concerning the silence of appellant during the course of interrogation.

■ A review of the record shows, however, that the evidence of appellant's guilt was overwhelming and that the error was harmless beyond any reasonable doubt. That appellant made an unlawful and forcible entry into the bar is shown by his fingerprint on the broken window; the evidence is uncontradicted that he was in the bar during the commission of

the burglary, and he was seen trying to open the cash register. When apprehended, he fled through the broken window used for entry. These and other facts so conclusively established appellant's guilt that we hold the error to have been without prejudice. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *In re Hill,* 71 Cal.2d 997 [80 Cal.Rptr. 537, 458 P.2d 449].)

Appellant's next objection is based upon the theory that an assault as an element of burglary of the first degree under Penal Code section 460, subdivision 1, is an offense that requires a specific intent to commit a violent injury upon the person of another. He contends that the trial court should have given a specific intent instruction *sua sponte* relative to the assault included in the charge of first degree burglary, and, further, that the evidence was not sufficient to show that the appellant intended to commit a violent injury on another during the course of the burglary.

The question of whether an assault requires specific or general intent has been considered by the appellate courts of this state in numerous cases. (See, e.g., *People* v. *Hood,* 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Coffey,* 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15]; *People* v. *Wilson,* 66 Cal.2d 749 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Carmen,* 36 Cal.2d 768 [228 P.2d 281]; *People* v. *McMakin,* 8 Cal. 547; *People* v. *Gaines,* 247 Cal.App.2d 141 [55 Cal.Rptr. 283]; *People* v. *Marceaux,* 3 Cal.App.3d 613 [83 Cal.Rptr. 798]; and *People* v. *Morrow,* 268 Cal.App.2d 939 [74 Cal.Rptr. 551].) Different conclusions seem to have been reached by the courts under the differing circumstances considered.

In *People* v. *Hood, supra,* the most recent expression of the Supreme Court on the subject, the cases are reviewed with specific reference to the question of whether evidence of *intoxication* should be considered in determining if the requisite intent was present. The court says, at pages 457-458: "It is true that in most cases specific intent has come to mean an intention to do a future act or achieve a particular result, and that assault is appropriately characterized as a specific intent crime under this definition. An assault, however, is equally well characterized as a general intent crime under the definition of general intent as an intent merely to do a violent act. . . . Since the definitions of both specific intent and general intent cover the requisite intent to commit a battery, the decision whether or not to give effect to evidence of intoxication must rest on other considerations.

"A compelling consideration is the effect of alcohol on human behavior. . . . [A] drunk man . . . is more likely to act rashly and impulsively and to be susceptible to passion and anger. It would therefore be anomalous to allow evidence of intoxication to relieve a man of responsibility for

the crimes of assault with a deadly weapon or simple assault, which are so frequently committed in just such a manner."

By analogy, it would seem that the decision as to whether specific intent is requisite to an assault while the defendant is in the course of committing a burglary must rest upon other considerations. A compelling consideration is the fact that in committing the burglary the defendant is engaged in the commission of an aggressive anti-social act. A man so engaged is more likely to behave rashly and impulsively to accomplish his felonious purpose and is more likely to anticipate possible resultant harm to others than one not so engaged. It would, to paraphrase *Hood,* be anomalous to allow evidence of an exclusive intent to burglarize and make good his escape to relieve a man of responsibility for an assault so frequently committed in connection with such an activity.[1] The pertinent wording of Penal Code section 460 would also appear to mitigate against such a result. This section provides, in part, "Every burglary . . . committed by a person . . . *who while in the commission of such burglary assaults any person,* is burglary of the first degree." (Emphasis added.) Patently, the assault contemplated herein is incident to the burglary and not one necessarily arising out of an intent to injure another. The criminal intent involved in committing the burglary and doing those things required to successfully conclude it suffices to supply the necessary intent to injure one who interferes therewith if the accompanying acts threaten or effect a violent injury.

We, therefore, conclude that where, as in the instant case, an assault in the course of commission of a burglary is charged, whether the intent to commit the assault be deemed specific or general, such intent is supplied and presumed from the felonious nature of the activities of the defendant and the act itself. It was not, therefore, error on the part of the trial court to fail to instruct *sua sponte* that it was necessary to find a specific intent by the appellant to commit a violent injury upon the person of King.

█  In view of the foregoing, the evidence amply supports the verdict. The testimony of King was that after he stepped into the bar, the man trying to open the cash register "charged" at him, and King slashed him with his knife as he came near. The appellant's recollection of what took place in the bar is not precise. He stated he did not remember "charging" King, but remembers trying to get away.

---

[1] For example, A, in running about B's property while burglarizing it, bumps into B,.whom he has not seen, knocks him down, and severely injures him. Or, for another example, A uses explosives to open a safe on B's property, and B, standing nearby, is severely injured by the resultant concussion. In both instances any specific intent to injure B is negated both by A's testimony and the circumstances. Is A guilty of committing no offense toward B's person because A's only intent was to complete his projected burglary in a good workmanlike manner?

Under this state of the facts, there was sufficient evidence upon which the jury could, as it did, find that the appellant committed an assault while in the commission of the burglary.

Numerous other contentions of error made on behalf of appellant are without merit.

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.

On September 23, 1970, the opinion was modified to read as printed above.