## STATE v. MICHAEL COMBS.

195 N. W. 2d 176.

February 18, 1972—No. 42329.

C. *Paul Jones,* State Public Defender, and *Ronald L. Haskvitz,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Otis, Kelly, and Hachey, JJ.

RONALD E. HACHEY, JUSTICE.*

This is an appeal from a conviction of murder in the third degree. On January 21, 1969, at approximately 10:30 p. m., defendant-appellant, age 19, and a friend, Richard Allen, age 17, entered Bauer's Superette in North Minneapolis, walked around the store, and, after defendant purchased a package of cigarettes, both left. In a few moments defendant and Allen reentered the store. Also in the store at the time were Merrill Bauer, the proprietor, Boris Halphen, an employee and brother-in-law of Bauer, and two customers, Miss Wallis A. Jarpey and Robert E. Schmidt. Allen began using profanity, Bauer told him to stop, an argument ensued, and Allen drew a gun from his belt and fired a shot toward the cash register. At that moment Allen was heard to say, "This is a holdup, give me the cash." Bauer opened the cash register and stepped back. At this point an exchange of shots took place and there is a conflict in the testimony concerning the sequence of shots. Schmidt and Halphen indicated that Allen stepped forward and shot Bauer in the chest, whereupon Bauer drew his pistol and shot Allen in the stomach and knee. Allen maintained that Bauer pulled his gun and shot Allen

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

in the stomach, whereupon Allen shot Bauer in the chest and then Bauer shot Allen in the knee.

Miss Jarpey was at the counter when Allen and defendant re-entered the store. She was leaving the store by the front door when she saw Allen draw a pistol and heard him say, "This is a blank and the next one is for real." Then she heard a "pop." When she was in the middle of the street she looked back and saw Bauer "jogging from the window, rocking kind of back and forth."

Meanwhile, about the time Allen pulled his pistol and fired the first warning shot, defendant, who was slightly behind and to the side of the action, pulled a razor blade from his pocket and began advancing toward Schmidt and Halphen. Schmidt testi-fied that defendant, wielding his razor, said, "Give me the cash." Halphen recalled defendant approaching and saying, "Get back," but did not recall that he asked them for their money. Immediate-ly after Bauer and Allen exchanged shots, Schmidt drew a gun in an attempt to stop the assailants. He fired a shot over Hal-phen's shoulder toward defendant and the shot struck him in the face. Defendant started to run but stopped in obedience to a command by Schmidt.

The police arrived, administered first aid to the three injured persons, and called an ambulance. Bauer was pronounced dead en route to the hospital.

At the hospital a detective of the Minneapolis Police Depart-ment read defendant a Miranda warning and asked him to an-swer questions. At first defendant declined, but after hearing the officer advise the attending doctor that blood tests were to be taken for possible alcohol and drug content and as the officer was leaving the room, defendant called him back and said: "Wait a minute, I will talk to you." The officer then questioned defend-ant as to events that had transpired at the Bauer store.

Defendant was charged with murder in the first degree, but by stipulation of counsel, only murder in the second degree and

murder in the third degree were submitted to the jury. The jury returned a verdict of guilty of murder in the third degree.

Allen had entered a plea of guilty to murder in the second degree and at the time of defendant's trial was incarcerated in the State Reformatory for Men at St. Cloud, Minnesota. Both defendant and Allen testified at defendant's trial, stating that they had not conspired to rob Bauer's store. Defendant further testified that he had pulled the razor out after the shooting was over, in order to protect himself and Allen from Schmidt and Halphen, that he was looking for some dog food at the time, and that he did not see Allen pull a gun on Bauer. Defendant denied that he had ordered Schmidt and Halphen to hand over their cash.

The issues raised on appeal are: (1) Was the evidence sufficient to justify the verdict? (2) Was prejudicial error committed when the interrogating officer was allowed to testify that he gave defendant a Miranda warning and defendant initially refused to talk but consented because he recognized the officer from discussions concerning a previous case?

■ The scope of inquiry by an appellate court in a criminal case is well settled in Minnesota. That rule is best stated in State v. Thompson, 273 Minn. 1, 36, 139 N. W. 2d 490, 515, certiorari denied, 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. 2d 56 (1966):

"* * * In State v. Norgaard, 272 Minn. 48, 52, 136 N. W. (2d) 628, 631, we said:

" 'In passing upon the weight and sufficiency of the evidence we can only repeat that the scope of our review is limited to ascertaining whether under the evidence contained in the record the jury could reasonably find the accused guilty of the offense charged. If the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that defendant was proven guilty of the offense charged, a reviewing court will not disturb its verdict.' See, also, State v. Markuson, 261 Minn. 515, 113 N. W. (2d) 346.

"We are also governed by the rule that on appeal this court must take the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved anything which contradicted their testimony."

See, also, State v. Bagley, 286 Minn. 180, 186, 175 N. W. 2d 448, 453 (1970); State v. Schabert, 222 Minn. 261, 268, 24 N. W. 2d 846, 850 (1946).

■ Circumstantial evidence may be used to substantiate a criminal conviction if it reasonably supports an inference of guilt. State v. Lundstrom, 285 Minn. 130, 171 N. W. 2d 718 (1969); State v. Parker, 282 Minn. 343, 164 N. W. 2d 633 (1969); State v. Bellecourt, 277 Minn. 163, 152 N. W. 2d 61 (1967).

■ Applying these rules of law to the facts in this case, the record indicates there was sufficient evidence to sustain the jury verdict. The jury could have relied on a number of facts in reaching its conclusion. It may have concluded that defendant and Allen's initial entrance of the store was nothing more than a pretext to "case the store." The jury could then have believed the two prosecution witnesses, Schmidt and Halphen, who admittedly had a good view of the incident and testified that defendant pulled his razor out of his pocket at almost the same instant that Allen pulled his gun. From this evidence alone, the jury might have found a concerted plan to rob the store. Schmidt, furthermore, testified that defendant ordered him to hand over his money. In addition to all this testimony, defendant claimed to have no knowledge that Allen was carrying a gun. Yet they had spent over an hour together while Allen had the rather large pistol stuck in his belt (a 9-mm. Beretta which is very similar to the military .45-caliber) and defendant claimed he never observed it. The jury may have found this testimony to be incredible. We find that the evidence in the record amply supports a finding that, as an accomplice of Allen, defendant was guilty of the commission of the crime of murder in the third degree.

■ Defendant contends that allowing the officer to testify concerning the circumstances surrounding the administration

of the Miranda warning was reversible error. The record indicates that after the officer had given the warning and after defendant initially refused to talk, he called to the officer and consented. The officer testified that defendant stated his reason for doing so was he recalled the officer's name and had talked to him the previous week about another case. Defendant cites our recent decision of State v. Beck, 289 Minn. 287, 183 N. W. 2d 781 (1971), as authority for reversing his conviction. In that case a police officer was allowed to testify that the defendant was given a Miranda warning, but the officer did not testify whether or not the defendant had refused to talk. Furthermore, this testimony was not intended as a foundation for admission of any voluntary statement by the defendant. We held that the officer's testimony was prejudicial because it would lead to the inference that the defendant remained silent at the time that the Miranda warning was given because he was guilty of the crime charged. We reasoned that since it is impermissible to allow the prosecution to comment on the defendant's decision to remain silent at trial, it should be equally impermissible to allow comment about the Miranda warning. We there cited People v. Lampson, 129 Ill. App. 2d 72, 262 N. E. 2d 601 (1970); State v. Brown, 185 Neb. 389, 176 N. W. 2d 16 (1970) (holding that the introduction of evidence that a defendant remained silent after being advised of his right to remain silent was prejudicial error); and People v. Savala, 10 Cal. App. 3d 958, 89 Cal. Rptr. 475 (1970) (holding that the introduction of such evidence was not prejudicial error). In the instant case, defendant did talk to the officer after being given the Miranda warning, and did testify in his own behalf, hence the analogy to comment on refusal to talk after the Miranda warning is fully depreciated. Moreover, the evidence regarding the circumstances surrounding the giving of the Miranda warning appears to have been used as a foundation for admission of the subsequent statement made by defendant to the officer.

Defendant finally urges that the officer's testimony that de-

fendant chose to talk to him because he recognized his name and remembered talking to him about another case during the previous week was prejudicial in that it indicated defendant had been charged with, or involved in, another crime. It could be also argued that an equally reasoned inference might be more favorable, that is, that defendant had been a victim of a crime or had been a state's witness. In any event, it was defendant who deemed it favorable to talk to the officer. We fail to find that the officer's testimony constituted prejudicial error.

The record does not indicate that the testimony of the officer was objected to during trial. Thus, this objection cannot be raised for the first time on appeal, a fact which adds additional support to our conclusion that we should not reverse because of the officer's testimony.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.