## STATE v. EVERETTE F. KEEZER.

143 N. W. (2d) 627.

June 17, 1966—No. 39,900.

*Everette F. Keezer,* pro se, for appellant.

*Robert W. Mattson,* Attorney General, *George M. Scott,* County Attorney, and *Theodore R. Rix,* Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

This is an appeal from judgment of conviction for the crime of burglary after a jury trial. The principal assignments of error are that the verdict is not justified by the evidence and that the trial court erred in its instructions to the jury.

From the record it appears that on the night of October 29, 1964, the Lake of the Isles Lutheran Church in Minneapolis was entered and burglarized. The church premises contain first-floor offices, a basement office, and a third-floor apartment occupied by one Charles Kleinsteuber, an elementary public school teacher who was also custodian of the premises. The parsonage next door was occupied by the Reverend Olney Eaton and his family.

At about 10:15 on the evening of the offense, one Timothy Mumford

escorted the pastor's daughter home from the place where she worked at a neighboring drugstore. They parted at about 10:30 p. m., and as Mumford left the parsonage he noticed two men standing across the street from the church, and as he walked slowly past them he observed their faces and was later able to identify one of them as the defendant. Apparently his suspicions were aroused and he returned to the parsonage where he stayed for about half an hour. As he was about to leave he saw the two men running across the lawn toward the street carrying certain objects. Although he did not see their faces on this occasion, he did observe the similarity in appearance as to size and clothing worn by them. The defendant was wearing a green tanker jacket and hat similar to those worn by him at the time of his arrest.

At about 11:15 p. m., Mr. and Mrs. Kleinsteuber entered the church. They observed flashlight beams and heard rummaging noises in the basement. As they proceeded up the stairs to their apartment, they noted that the door to the pastor's office was open and the light was on. Small coins were strewn on the stairway. They noticed that the door to their apartment had been opened and damaged. Kleinsteuber called the police from the phone in his apartment. He observed that a gun collection was missing from the storeroom, the contents of a filing cabinet had been removed, a stamp collection was missing, and their bedroom had been ransacked. They then proceeded to the parsonage next door where they met the pastor's daughter and Timothy Mumford. While Kleinsteuber and Mumford were crossing the lawn on their way back to the church, they noticed a black Lincoln Continental automobile proceeding slowly past the front of the church. The passengers could not be definitely identified but it was testified to that it was a 4-door black Lincoln Continental with a whip antenna, which they were able to identify as the same car the defendant occupied at the time he was apprehended. In an unsuccessful attempt to follow the car, they encountered a police car and gave them the description of the Lincoln automobile.

About midnight, the police officers who had been searching the area located a car of the description given at a White Castle drive-in. They found the defendant occupying the front seat with his accomplice, Oliver Dillworth. After defendant got out of the automobile, he was searched

and an alarm clock and a sheet containing a stamp collection were found in his pockets. A gun was found under the front seat of the automobile. At the time of his arrest, the automobile was searched and was found to contain a gun collection consisting of four guns owned by Kleinsteuber, a red purse, a white table radio, a pen with Reverend Eaton's name engraved on it, and two suitcases, all identified as having been taken from the church property.

The defendant called witnesses who testified that he was at another place at the time of the alleged burglary.

■ The defendant contends that the evidence does not support the verdict, and his principal complaint is directed against the testimony of Timothy Mumford who said that the night was bright and clear and that there was a full moon. The witness was concededly mistaken in his testimony as it was established from official records that there was no moon at that time on that night. The evidence did establish, however, that the area was well lighted both by street lights and the lights on the parsonage property. In any event, the weight and credibility of Mumford's testimony was for the jury. In determining the sufficiency of the evidence to support a verdict, this court's scope of review was limited to ascertaining whether, under evidence in the record, a jury could reasonably find the defendant guilty as charged. Neal v. United States (8 Cir.) 114 F. (2d) 1000, certiorari denied, 312 U. S. 679, 61 S. Ct. 448, 85 L. ed. 1118; State v. Adamson, 73 Minn. 282, 76 N. W. 34; State v. Gavle, 234 Minn. 186, 48 N. W. (2d) 44; State v. Markuson, 261 Minn. 515, 113 N. W. (2d) 346. We conclude from an examination of the record as a whole that it fairly sustains the verdict of guilty.

■ In its instructions the trial court told the jury that if the state had to depend upon direct evidence in every criminal case "it would be able to convict but very few people for violating the law." He substantially instructed the jury that the guilt of the defendant might be inferred from facts and attendant circumstances, and that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference and established facts, it would sustain a conviction provided, of course, such inferences from established facts are inconsistent with innocence. The instruction did no more than to inform

the jury that the law makes no distinction between circumstantial and direct evidence as to the degree of proof required for a conviction but respects each for such convincing force as it may carry and accepts each as a reasonable method of proof. 5 Dunnell, Dig. (3 ed.) § 2449; 23A C. J. S., Criminal Law, § 1154. While the instruction objected to is not to be recommended, we are of the view that in the context of the instructions as a whole it was not so prejudicial as to require a new trial.

■ Objection is also leveled at the court's instructions with reference to the defense of alibi. In that instruction the court explained that that defense, if sufficiently proved to create a reasonable doubt, would entitle the defendant to an acquittal but added, "However, this defense is easily fabricated and hard to disprove, and you should subject it to a very searching scrutiny." It is well established that an instruction as to alibi which invades the province of the jury should not be given. 23A C. J. S., Criminal Law, § 1153. In State v. Duddy, 152 Minn. 179, 181, 188 N. W. 261, 262, a similar instruction was given. The court there observed:

"* * * It did not have the effect of casting upon defendant the burden of establishing the alibi as a defense, nor in any proper view of impairing or negativing the general presumption of innocence. The court was quite clear in placing the burden of proof on the state, and instructed the jury that no verdict of guilty could be returned except they found from all the evidence beyond a reasonable doubt that defendant was a party to the commission of the crime. While the remark might well enough have been omitted from the charge, it is clear that the jury was not misled or confused thereby. The charge as a whole was exceptionally fair and impartial."

As to the instruction objected to, we may again observe that while it was not one to be recommended, it cannot be said that in view of the instruction as a whole it was so prejudicial as to deny the defendant a fair trial.

The other objections raised by defendant have been examined in light of the record and, in our opinion, are without sufficient merit to require discussion.

Affirmed.