## STATE v. JAMES KERMIT SANDVE.

156 N. W. (2d) 230.

February 9, 1968—No. 40,299.

*C. Paul Jones,* State Public Defender, and *Bruce D. Willis,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

Defendant was found guilty by a jury of the crime of simple robbery and sentenced to the State Prison for a term not to exceed 10 years.

The facts are not seriously in dispute. About 10 p. m. on May 6, 1965, Eloy McKeever, who was employed as a desk clerk at the Wilmington Hotel in Minneapolis, was at his position. A man, later identified as defendant, James Sandve, walked into the hotel with his right hand in his jacket pocket and said to McKeever, "This is a stickup." His hand was held in his pocket in such a manner as to create the impression that he was armed; his face was covered by a handkerchief which extended up to a point slightly below his eyes. It later developed that he did not in fact have any weapon on him.

The hotel receipts were in a cash drawer behind the counter. In re-

sponse to defendant's demand, McKeever unlocked the cash drawer. Defendant had stayed at the hotel a few times and apparently knew where the cash was kept. Instead of asking McKeever to get the money for him, the intruder walked behind the counter and then asked where the cash box was. He took all the paper money from the cash drawer but did not take the coins. He then turned around and headed for the door.

A hotel guest, Ted Bordeaux, was standing in front of the counter and witnessed the entire proceeding. As defendant came from behind the counter he passed within 3 or 4 feet of Bordeaux. As he neared the door he turned his back to Bordeaux, who then grabbed him and knocked him to the floor. Bordeaux struck him several times and held him until police arrived and took him into custody. He was treated for superficial cuts suffered in the scuffle. Bordeaux said defendant struggled to begin with, but he apparently struck no blows and was quite easily subdued by Bordeaux, who was a large, powerful individual.

Defendant was charged with simple robbery in violation of Minn. St. 609.24. He entered a plea of not guilty. At the arraignment on May 17, the public defender was appointed to represent him. Defendant was dissatisfied with the attorneys from the public defender's office and requested time to procure his own counsel. The trial court granted him time but he was unable to retain his own attorney. He continued to express discontent with the attorneys from the public defender's office. The judge advised him that an attorney from outside the public defender's office could be appointed for him, but cautioned him that such attorney would likely be less familiar with criminal trials than would an experienced attorney from the public defender's office. Defendant thereupon requested that Howard Marker of the public defender's office be appointed to represent him, which was done.

The trial was before a jury, which found defendant guilty. It is not denied at this time, nor could it well be, that defendant was the individual who committed the crime. His defense, and the only question he raises here, is that he was so intoxicated at the time that he did not know what he was doing. He also complains of errors in the court's instructions, which will be discussed hereinafter.

The crime of simple robbery is defined in § 609.24 as follows:

"Whoever, *knowing he is not entitled thereto,* takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome his resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery * * *." (Italics supplied.)

Thus, it is clear that one of the elements of the crime is knowledge by the accused that he is not entitled to the property which he takes.

Section 609.075 relates to intoxication as a defense, and reads:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Thus, under this statutory provision intoxication may be taken into consideration in determining whether defendant had that state of mind which would enable him to know that he was not entitled to the property that he was taking. The court instructed the jury fully on the issue of intoxication and were it not for the fact that certain instructions, which are claimed to be error, had been given, there would be no doubt that the jury had ample evidence to find that defendant was not so intoxicated that he did not know the property he was taking did not belong to him. He had his face covered with a handkerchief; he had his hand in his pocket, simulating the possession of a weapon; he knew where the money was and went to the cash drawer and took all the paper money out, leaving the coins; when he entered he informed McKeever, "This is a stickup"; and he sought to leave the place while he still had McKeever believing that he was armed. While the final outcome of the proceeding demonstrates that the holdup was clumsily performed, at least when he turned his back to Bordeaux, other evidence indicates quite clearly that he knew exactly what he was doing. The only evidence of intoxication is a statement in the hospital record, apparently made by the doctor who treated him, that he appeared inebriated, and a statement by one of the

police officers that he smelled liquor on his breath. A police officer testified that defendant had told him that he had consumed about 2 bottles of wine, but even though he was partially under the influence of liquor, the jury could find that he knew full well what he was doing when he committed the robbery.

The court's instruction which is attacked would not be of great significance unless it had some relevance to the finding by the jury that defendant knew what he was doing. Defendant did not testify in his own behalf. The court and prosecuting attorney were informed by defendant and his counsel in chambers that he did not intend to take the stand, and defendant's counsel requested the court to instruct the jury that defendant's failure to take the stand could not be held against him. The instruction given by the court went far beyond legitimate bounds, even assuming the court had the right to give such instruction at all.

Minn. Const. art. 1, § 7, provides:

"No person * * * shall be compelled in any criminal case to be a witness against himself, * * *."

Minn. St. 611.11 reads:

"The defendant in the trial of an indictment, complaint, or other criminal proceeding shall, at his own request and not otherwise, be allowed to testify; but his failure to testify shall not create any presumption against him, *nor shall it be alluded to by the prosecuting attorney or by the court.*" (Italics supplied.)

Apparently in compliance with defendant's request that the court instruct the jury that failure to take the stand could not be held against him, the court instructed the jury thus:

"And, lastly, before I send you out to deliberate, the defendant did not testify in this case and under our Constitution, as most people, regardless of whether they are learned in the law or not, well realize, we have a constitutional right to testify in a criminal case and we have a constitutional right not to testify, which comes from the old days of the English law, when they used to arrest somebody for a crime, why they would stick you in boiling oil or set fire to you and then if you confessed, you were guilty or if you blistered you were guilty, and what have you,

and that's why we so-called enlightened people developed the privilege against self-incrimination and I think it is a very sound one and a very fair one and I am very much in favor of it, in spite of some of the criticism of it in the past few years. But the point is this, and this is what's important about it, any defendant has a right not to testify if they so choose, and it is your duty to decide the case solely on the evidence that you heard and utterly disregard the fact as to whether or not a defendant takes the stand in his own behalf. In other words, just do not consider that question in your deliberations. Sometimes there is a tendency for jurors to take sides over that particular issue and it would be unfair because our constitution provides that we do not have to testify and no juror would be fulfilling their oath if they considered that either for or against the defendant. In other words, if the citizens of this country don't like that privilege against self-incrimination, the Constitution is what they have to change, not the rules that we are sitting here operating under today. So you will disregard that situation in your deliberations."

While the court seemingly indicates that he favors the rule that a defendant need not testify against himself, this instruction could easily leave the impression with the jury that they had the privilege, if they so chose, of disregarding the constitution and the statute. It would have been better had the court said nothing; but if he was going to instruct the jury at all in compliance with defendant's request, he should have given a simple instruction that no inference could be drawn from defendant's failure to take the stand. There was no need for elaborating on that statement or for explaining the historical significance of ill treatment of defendants in the past.

Under our Federal Constitution, which is similar to our state constitution and statute, the Supreme Court of the United States in Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. ed. (2d) 106, held that it was reversible error to state to the jury that they could draw *adverse* inferences from defendant's failure to take the stand. In Tehan v. Shott, 382 U. S. 406, 86 S. Ct. 459, 15 L. ed. (2d) 453, the court explained that Griffin related to adverse comment. See, also, Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882.

In State v. Pearce, 56 Minn. 226, 235, 57 N. W. 652, 655, we held

that it was not error for the trial court to refuse to instruct the jury that it could infer nothing from the accused's failure to testify. In so doing, we said:

"* * * It would be a great judicial feat for the trial court to instruct a jury in regard to the effect of this law without alluding to it. * * * The trial court is therefore forbidden to hint at the existence of such a law, even by a remote suggestion."

Were this a case in which the evidence left any room for doubt as to whether the defendant was the one who committed the robbery, we would be compelled to reverse as a result of the court's instruction quoted above. However, here there is no question that defendant was the individual who committed the robbery. The only defense he had was that he was so intoxicated that he did not know he was not entitled to the property he was taking. The evidence on this issue seems to us to be so conclusive, in the light of the actions of defendant, that we cannot believe the court's instruction, even though erroneous, could have had any detrimental effect on the jury's determination of guilt. Defendant was caught in the act, with every indication that he sought to hide his identity by covering his face; he sought to create the impression that he was armed; he stated to McKeever, "This is a stickup," which is contrary to any assumption that he did not know what he was doing; and in other ways he left the impression that even though he had consumed some alcoholic beverages, he knew full well what he was doing at the time he committed the robbery.

The only other claim of defendant is that he was inadequately represented. This is becoming such a common assertion these days that no good could come from discussing the matter in each case individually. In State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785, and State v. Russell, 272 Minn. 463, 138 N. W. (2d) 690, among many recent cases, we discussed the requirements for establishing that counsel was so inadequate that defendant was deprived of his right to a fair trial. We have examined the record in this case and have come to the conclusion that the attorney, whom defendant himself selected from the public defender's office, did everything to protect defendant's rights that could be

done. We find no inadequacy in such services. We see no benefit to anyone in discussing the evidence on this issue in more detail. It follows that there must be an affirmance.

Affirmed.