## STATE v. GLENN MYLES HOUGE.

159 N. W. (2d) 265.

May 31, 1968—No. 40,812.

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson* and *Robert E. Oliphant,* Assistant State Public Defenders, for appellant.

*Douglas M. Head,* Attorney General, *David J. Byron,* Special Assistant Attorney General, and *Robert W. Kelly,* County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment convicting defendant of aggravated forgery in violation of Minn. St. 609.625, subd. 1(1). Defendant, Glenn Houge, was convicted of making and delivering, with fraudulent intent, a check for $93.45, payable to Gaalaas Jewelry in Stillwater and purporting to be made by one John Benson.

Defendant was released from the Stillwater Prison at 7:30 a. m. September 3, 1966. At about 9 o'clock that morning, a man identified as defendant entered the St. Croix Drug Store in Stillwater and asked for check blanks for the First National Bank of Stillwater. The clerk gave him three blue First National check blanks. She testified that he was wearing a dark suit and that he was in the store about 5 minutes.

Later that morning, a man identified as defendant entered the Coast-to-Coast store in Stillwater and again requested blank checks for First National. The store had no First National checks in supply so the woman on duty gave him counter checks. She testified that the man was dressed in a dark suit.

At about noon of the same day a man identified as defendant came into the Gaalaas Jewelry store in Stillwater. The man wore a navy blue suit, and he remained in the store for 20 minutes or more. He bought a man's round, yellow Hamilton watch, which had an expansion band with Florentine finish, a sweep second hand, and a faceted crystal. Apparently the faceted crystal is unusual. The clerk on duty testified that the watch taken from defendant's possession at the time he was placed in custody fit the description of the watch which she sold to him on September 3. The man also bought a woman's watch. The price for the two watches was $93.45. Upon making the purchase, the man withdrew a blue, unpersonalized First National check blank from his coat, made out

a check for $93.45 payable to Gaalaas Jewelry, and signed it "John Benson." For identification he displayed a Disabled American Veteran's (DAV) membership card and another card, both of which had Benson's name on them. The clerk recorded Benson's name and a description of the watches in a book in which all watch sales are recorded. At the trial, the clerk testified that she recognized state's exhibit 1, a DAV membership card which had been issued by Chapter 1 in Minneapolis and which bore Benson's name, as the card presented to her. Frank Howard, the official in charge of membership records for Chapter 1, testified that state's exhibit 1 had been issued to the defendant, Glenn Houge. He said there was no John Benson on the chapter's membership rolls.

At about 4 o'clock on the same afternoon, a man identified as defendant walked into the Charles Jewelry store in Hastings, Minnesota. He bought a ring and a penknife. The total purchase price for the two items was $35.25. The ring had a yellow gold mounting with a rectangular red ruby stone. At trial Frank Charles, who made the sale, testified that the ring which was removed from defendant's finger at trial fit the description of the one sold on September 3. Using a blank check in his possession, defendant wrote a check for $35.25 payable to Charles Jewelry and signed "John Benson." The check was a counter check which did not name a drawee bank.When the check was made out, the First National Bank of Stillwater was listed as the drawee bank. Defendant did not show any identification.

The assistant cashier of the First National Bank of Stillwater testified that as of September 3, 1966, the bank had no record of a demand deposit under the name of either the defendant or John Benson.

Defendant's version of his activities on September 3 is that after being released from the penitentiary he went to a Stillwater liquor store, bought two half pints of whiskey, and consumed them. After drinking the liquor, he talked with a banker, went to a used car lot and purchased a car, and left town. He said that he left the car lot at about 1 p. m. but did not remember what happened thereafter. He testified that he did not know where the ring came from and that he did not remember having the watch. He said he did not pick up any checks at the St. Croix Drug Store or the Coast-to-Coast store.

Defendant was arrested on September 8, 1966, and arraigned before the Stillwater Municipal Court that same day. He was given a preliminary hearing in municipal court on September 16 and bound over for trial. He was arraigned before the Washington County District Court on September 26, at which time he pled not guilty and asked for a nonjury trial. The public defender represented him at the arraignment. On that same day, the state filed a Rasmussen notice stating that it intended to introduce various evidence which it had seized. Much later, on October 18, it filed a Spreigl notice stating that it intended to introduce evidence of other forgeries and attempted forgeries, including the $35.25 check made payable to Charles Jewelry.

Defendant contends that there was not sufficient evidence to prove his guilt beyond a reasonable doubt; that Minn. St. 609.625, subd. 1(1), violates the single-subject and title requirements of Minn. Const. art. 4, § 27, and is unconstitutionally vague; and that the evidence relating to the check made payable to Charles Jewelry was inadmissible because the notice of intent to use evidence of other crimes did not comply with the State v. Spreigl, 272 Minn. 488, 139 N. W. (2d) 167, requirement that such notice must be given a "reasonable time" before trial.

■ There is abundant evidence to support the trial court's finding that defendant's guilt was proved beyond a reasonable doubt. One witness identified him as the man who obtained blue First National Bank checks; another identified him as the one who obtained counter checks. Still another identified him as the one who used a blue First National Bank check to purchase watches. A fourth identified him as the one who used a counter check to purchase a ring and knife. All of these transactions are closely related in time. The clerk who sold the watches testified that a DAV membership card issued to defendant appeared to be the card which was presented to her for identification purposes. She further testified that the watch traced to defendant's possession—a watch with an unusual crystal—fit the description of the one she sold. The clerk who sold the ring testified that it resembled the one found on defendant's person. Against all this, there is only the uncorroborated testimony of defendant that he was elsewhere at the time of the events in question. This evidence, particularly when viewed in light of the well-settled principle

that factfindings by the trier of facts will be upset only when manifestly and palpably contrary to the evidence, is more than adequate to sustain the trial court's finding of guilt.

■ A recent case in this court disposes of the issue of whether § 609.625 complies with the provision in Minn. Const. art. 4, § 27, which provides: "No law shall embrace more than one subject, which shall be expressed in its title." In State v. Bell, 280 Minn. 55, 157 N. W. (2d) 760, we sustained § 609.625 against an attack based on art. 4, § 27.

The contention that § 609.625, subd. 1(1), is unconstitutionally vague is likewise untenable in view of the Bell case. Here defendant was convicted of the act of forgery itself. In Bell, the defendant had been convicted of uttering a forged instrument. He argued that "utter," when used to signify the passing of a forged instrument, was unconstitutionally vague. This court rejected the argument, pointing out that "utter" used in this sense is well known to the law. If "utter" in this sense is not unconstitutionally vague, a fortiori, "forgery" is not unconstitutionally vague, for, unlike "utter," "forgery" is a word in widespread general usage.

■ In State v. Spreigl, supra, we held that, notwithstanding evidence of additional crimes and misconduct may be admissible under some exception to the general exclusionary rule, such evidence shall not be received unless within a reasonable time before trial the state furnishes defendant with a written statement of the crimes or misconduct it intends to show he has committed. Here, the Spreigl notice was not filed until the day before trial although defendant had been arraigned some 40 days previously. The Rasmussen notice was given about a month before trial. No reasons are given to explain why the state delayed so long in filing the Spreigl notice. Without holding categorically that in no circumstances would a day's notice be reasonable, we think that it would ordinarily be the better practice to give the notice more than a day before the case is to go to trial. After all, the purpose of the Spreigl notice is to assure the accused of adequate time in which to prepare a defense against charges which the state seeks to prove.

However, the state's eleventh-hour filing, even if erroneous, does not in this case constitute prejudicial error. In State v. Sandve, 279 Minn. 229, 234, 156 N. W. (2d) 230, 234, we held that the trial court's er-

roneous commentary on defendant's failure to testify was not prejudicial because "[t]he evidence * * * seems to us to be so conclusive * * * that we cannot believe the court's instruction, even though erroneous, could have had any detrimental effect on the jury's determination of guilt." We are of the same opinion here. Even without any of the evidence pertaining to the Charles Jewelry check, the evidence adduced by the state is highly convincing, and it is opposed only by defendant's uncorroborated and often muddled testimony. In this state of the evidence, it is hardly conceivable that the cumulative evidence relating to the Charles Jewelry check could have had decisive impact on the trial court's determination. It follows that the judgment must be affirmed.

Affirmed.