## STATE v. EDWARD LaVALLE DUNCAN.

250 N. W. 2d 189.

January 21, 1977—No. 46097.

18

*C. Paul Jones*, State Public Defender, and *Robert Oliphant*, Assistant State Public Defender, for appellant.

*Warren Spannaus*, Attorney General, *William B. Randall*, County Attorney, and *Steven C. DeCoster*, Assistant County Attorney, for respondent.

Heard before Todd, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Edward LaValle Duncan appeals his conviction of aggravated robbery. At the time of the alleged crime the appellant was 17. After a referral hearing and order for prosecution as an adult pursuant to Minn. St. 260.125, the case was tried to a jury in

Ramsey County District Court. The appellant was sentenced to a maximum of 20 years to be served at the State Reformatory for Men, St. Cloud. He requests a reversal of his conviction with a dismissal of the charges or, in the alternative, a remand to juvenile court for a new referral hearing. We affirm.

The issues raised in this appeal are the following:

(1) Whether the pretrial lineup was impermissibly suggestive.

(2) Whether the appellant's certification for trial as an adult was proper.

(3) Whether the trial court abused its discretion in ordering a joint trial.

(4) Whether the evidence was sufficient to support the jury's verdict of guilt beyond a reasonable doubt.

On the morning of November 6, 1974, the Shell service station at 374 North Lexington, St. Paul, was robbed and Dale Faulkner, the attendant on duty, was beaten. Faulkner testified that at about 10 a.m. that morning, two youths approached the station from behind the building and requested change for a ten dollar bill. The three then went into the office so that Faulkner could get change from the cash register. As soon as the register was open the two youths began to assault Faulkner and pulled him from the office area into the service area and later into the storage room. They kicked him and beat him severely about the face and head with their fists and possibly with an oil can.

A customer testified that at the time the robbery was in progress, she stopped at the station and while waiting for her car to be serviced, noticed a man come into the office from the work area and stand in front of the cash register. She decided to enter the station, pushed open the door to the office area, walked toward the back of the station, and stopped when she heard voices say something like: "Give me the cash or the stash." — "I told you I don't have it." —"I told you to give me the cash."

The customer returned to her car, drove to a store across the street and asked the attendant to call the police. She then

watched through the front window of the store until the police arrived. Except for the 3 or 4 minutes when she was crossing from the service station, she observed the station continuously and saw no one enter or leave the building, although several cars pulled in and waited for service during that time.

While the three were still in the storage room, the police arrived, responding to a call that a robbery was in progress. One of the officers entered the station, and after hearing voices in the storage area, approached the storage room. On the way he observed blood spots on the floor and a smashed water can. When he arrived at the closed door to the storage room, he announced himself as a police officer and said, "come on out—I have a shotgun." The door was opened by the appellant's codefendant, Jamie Tucker, who attempted to close the door on the officer. The police officer then kicked the door open, and arrested appellant Duncan and his codefendant Tucker.

The victim told the police he had been beaten by the two youths arrested.

Analysis of the youths' clothes revealed spots of blood, and a red substance was found on the youths' hands.

A search at the scene of codefendant Tucker's pockets revealed $4.75 in quarters, $3.50 in dimes, 31 one dollar bills, 5 five dollar bills, 1 ten dollar bill, and 15 keys.

On November 7, 1974, the day after appellant was arrested, a violation referral petition was filed in regard to the appellant in Ramsey County district court, juvenile division. On November 18, 1974, a hearing was held in juvenile court on the question of whether the violation should be referred to the appropriate prosecuting authorities pursuant to Minn. St. 260.125. On the following day, November 19, the court ordered reference for prosecution on grounds the public safety would not be served by disposition in juvenile court.

On December 17, 1974, the appellant was identified by Faulkner in a lineup at the St. Paul police department. The lineup had been requested by the defendants and attorneys for both defend-

ants were present. The lineup consisted of six youths, two of whom were the defendants, who were of similar age, height, and build, and of the same race. Four of the youths were dressed in street clothes; the two defendants were dressed in jail clothes. Faulkner identified each of the defendants.

At a Rasmussen hearing on February 3, 1975, appellant's attorney objected to the lineup as being "impermissively suggestive." The court ruled that the lineup was not improper since all the youths were of approximately the same age, height, and build, and of the same race, and since the street clothing worn by the other youths was of the same type worn by the defendants on the date of the offense.

When both matters were called for trial, the court granted the state's motion for a joint trial in the interests of justice. Both defendants appeared personally in chambers and agreed to a joint trial after consultation with their separate attorneys.

At trial both Duncan and Tucker were found guilty by jury verdict of aggravated robbery and after a presentence investigation were sentenced to the Minnesota Corrections Authority for a maximum term of 20 years. Duncan appeals from the judgment of conviction.

■ Lineup and Identification of Appellant.

The appellant contends that he was identified in court as a result of an impermissibly suggestive pretrial lineup.

The applicable test for the sufficiency of lineup procedures is whether in light of the totality of the surrounding circumstances the procedures employed are impermissibly suggestive and conclusive to irreparable mistaken identification so as to result in a denial of due process. E. g., Broberg v. State, 287 Minn. 66, 176 N. W. 2d 904, certiorari denied, 400 U. S. 843, 91 S. Ct. 87, 27 L. ed. 2d 79 (1970).

This issue, as pointed out by the state, is controlled by Broberg v. State, *supra*. In the lineup in which the defendant in that case was identified, he was the only person dressed in a workhouse uniform, and only one other of the participants was of the de-

fendant's approximate height. Although this court held that the lineup may have fallen short of the ideal, it was not so suggestive as to deny the defendant his right to due process.

Furthermore, even if the lineup was tainted, a reversal is not required if the record establishes clearly and convincingly that the in-court identification had an independent source and was not the product of the lineup. See, United States v. Wade, 388 U. S. 218, 239, 87 S. Ct. 1926, 1939, 18 L. ed. 2d 1149, 1164 (1967).

In the present case, there was an adequate independent basis for the in-court identification of Duncan by Faulkner. Faulkner identified Duncan as one of his assailants at the scene of the crime to police officers. See, Broberg v. State, *supra*.

We feel the need to point out that the lineup in this case fell short of the ideal although it did not result in a denial of due process. We submit that fairness dictates that if a suspect is to appear in a lineup with others who are dressed in civilian clothing, the suspect himself should be permitted to wear civilian clothing; or, in the alternative, if others appearing with the suspect are in prison garb, then the suspect as well as all others should appear in prison garb. In short, all participants in a lineup should wear either civilian or prison clothing.

■ Referral to District Court Under Minn. St. 260.125.

The appellant was 17 years old at the time of the alleged offense and therefore originally subject only to the jurisdiction of the juvenile court system. Minn. St. 260.111. A violation referral petition, which contained the following allegations, was filed in regard to the appellant in Ramsey County juvenile court:

"He did on or about November 6, 1974, within the corporate limits of St. Paul, Ramsey County, State of Minnesota, wrongfully and unlawfully and knowing he was not entitled thereto, take in the presence of Dale Faulkner personal property consisting of U. S. currency and he the said Edward Duncan used force against Dale Faulkner to overcome his resistance, he, the said

Edward Duncan then and there and while committing the said robbery did inflict bodily harm upon Dale Faulkner."

Minn. St. 260.125 outlines the procedure to be followed and the circumstances which must be present before a juvenile can be referred to the district court for prosecution as an adult on the basis of this petition. That statute provides:

"Subdivision 1. When a child is alleged to have violated a state or local law or ordinance after becoming 14 years of age the juvenile court may enter an order referring the alleged violation to the appropriate prosecuting authority for action under laws in force governing the commission of and punishment for violations of statutes or local laws or ordinances. The prosecuting authority to whom such matter is referred shall within the time specified in such order of reference, which time shall not exceed 90 days, file with the court making such order of reference notice of intent to prosecute or not to prosecute. If such prosecuting authority files notice of intent not to prosecute or fails to act within the time specified, the court shall proceed as if no order of reference had been made. If such prosecuting authority files with the court notice of intent to prosecute the jurisdiction of the juvenile court in the matter is terminated.

"Subd. 2. The juvenile court may order a reference only if

"(a) A petition has been filed in accordance with the provisions of section 260.131

"(b) Notice has been given in accordance with the provisions of sections 260.135 and 260.141

"(c) A hearing has been held in accordance with the provisions of section 260.155, and

"(d) The court finds that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts.

"Subd. 3. When the juvenile court enters an order referring an alleged violation to a prosecuting authority, the prosecuting

authority shall proceed with the case as if the jurisdiction of the juvenile court had never attached."

Appellant contends that the district court lacked jurisdiction over him because the reference hearing was defective for the following three reasons: (1) There was no finding that the appellant was not suitable to treatment; (2) the evidence was insufficient to support the juvenile court's determination that "the public safety is not served under the provisions of laws relating to juvenile courts"; and (3) there was no probable cause to believe the allegations in the petition. Each is without merit.

First, as to the contention that there was no finding of non-suitability to treatment, the court need only find either non-amenability to treatment or, in the alternative, a threat to public safety before reference is permissible. State v. Hogan, 297 Minn. 430, 438, 212 N. W. 2d 664, 669 (1973). In this case, the judge based his decision on the threat to public safety.

Second, as to the amount of evidence required to support the finding of a threat to public safety, this court has stated in Hogan (297 Minn. 438, 212 N. W. 2d 669):

"In determining if the public safety would be threatened, among the relevant factors to be considered are: (1) The seriousness of the offense in terms of community protection; (2) the circumstances surrounding the offense; (3) whether the offense was committed in an aggressive, violent, premeditated, or willful manner; (4) whether the offense was directed against persons or property; (5) the reasonably foreseeable consequences of the act; and (6) the absence of adequate protective and security facilities available to the juvenile treatment system. See, Mikulovsky v. State, 54 Wis. 2d 699, 196 N. W. 2d 748 (1972); Note, 54 Minn. L. Rev. 389, 404 (1969)."

In his memorandum accompanying the order for referral to district court, Judge Gingold stated:

"The record reveals that the said Edward LaValle Duncan appeared in the Ramsey County Juvenile Court on August 6, 1971,

and was adjudicated for Larceny; he appeared on September 29, 1971, for Tampering with an Auto and was placed on probation; that the matter was dismissed on May 8, 1972. That he was adjudicated on October 10, 1974, for Burglary and Carrying a Concealed Weapon and placed on probation under the supervision of the Department of Court Services."

This court recently enunciated the standards for review of orders granting or denying reference in In re Welfare of I. Q. S. 309 Minn. 78, 244 N. W. 2d 30 (1976). This court first stated (309 Minn. 83, 244 N. W. 2d 36):

"* * * [F]our procedural safeguards, meeting due process requirements, must attend all waiver proceedings:

"(1) If the juvenile court is considering a waiver of jurisdiction, the juvenile is entitled to a hearing;

"(2) The juvenile is entitled to representation by counsel at such hearing;

"(3) The juvenile's attorney must be given access to the juvenile's social record on request; and

"(4) If jurisdiction is waived, the juvenile is entitled to a statement of reasons in support of the waiver order."

Then, in regard to review of orders of reference, we stated (309 Minn. 86, 244 N. W. 2d 37):

"Within the legislative scheme, which upon analysis satisfies constitutional standards, the juvenile court is empowered to order reference solely upon its finding 'that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts.' Minn. St. 260.-125, subd. 2(d).

"The complexity of review of the juvenile court's orders in the individual matters is, in some instances, compounded by a lack of its particular findings of fact upon which the statutory conclusion is based. In those instances, we have relied heavily upon the record to supplement any inadequacy in the court's findings. However, we would prefer—and think it is the responsibility

of the juvenile court—to have orders granting or denying reference accompanied by a sufficient statement of the reasons for and considerations leading to that decision. By this holding, we do not mandate that the statement necessarily meet formal or conventional findings-of-fact requirements. However, the statement should sufficiently demonstrate the court's full investigation of the matter, that careful consideration has led to its decision, and upon which statutory basis the court has relied. Satisfaction of this requirement would afford this court more meaningful review. Kent v. United States, *supra*.

"Minn. St. 260.125 vests in the juvenile court considerable latitude within which it may determine whether to retain jurisdiction over the juvenile or, subject to statutory delimitation, waive that jurisdiction. This substantial discretion presupposes procedural regularity sufficient in each case presented to satisfy the basic requirements of due process and fairness. Therefore, such findings will not be disturbed upon appeal absent a showing that they are 'clearly erroneous' so as to constitute an abuse of discretion."

Because the order contains sufficient statement of the reasons for the referral, which are supported in the record, it cannot be said that such findings were clearly erroneous.

Finally, as to the third contention, the lack of a probable cause hearing does not raise an issue of substance. The United States Supreme Court noted in Breed v. Jones, 421 U. S. 519, 538, note 18, 95 S. Ct. 1779, 1790, 44 L. ed. 2d 346, 360 (1975), that a probable cause hearing for a juvenile prior to transfer to adult proceedings would not raise any problems of double jeopardy; however, the Breed court left open the issue of whether due process requires a probable cause hearing *prior to* referral. The court stated (421 U. S. 537, 95 S. Ct. 1789, 44 L. ed. 2d 360):

"A requirement that transfer hearings be held prior to adjudicatory hearings affects not at all the nature of the latter proceedings. More significant, such a requirement need not affect

the quality of decisionmaking at transfer hearings themselves. In *Kent v. United States,* 383 U. S. at 562, the Court held that hearings under the statute there involved 'must measure up to the essentials of due process and fair treatment.' However, *the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.*" (Italics supplied.)

Several states, by statute, require a probable cause hearing prior to referral, see, e. g., In re Maricopa County, Juvenile Action No. J-72804, 18 Ariz. App. 560, 504 P. 2d 501 (1972) ; In re R. J. C. v. State, 520 P. 2d 806 (Alaska 1974) ; and, as appellant's brief points out, the Uniform Juvenile Court Act, which is in effect in at least two states (North Dakota and Georgia), also requires a probable cause hearing prior to referral. However, to date no court has required it as a matter of constitutional law. In 1974 (prior to Breed), one law review article listed at least 20 state statutes which required a finding of probable cause before referral. See, Carr, *The Effect of the Double Jeopardy Clause on Juvenile Proceedings,* 6 U. of Toledo L. Rev. 1, 21.

The issue of whether such a hearing is *constitutionally* mandated, however, was recently considered in A Juvenile v. Commonwealth, 347 N. E. 2d 677 (Mass. 1976). A juvenile challenged the constitutionality of the Massachusetts referral system adopted after Breed v. Jones, *supra,* on grounds, inter alia, that a probable cause hearing before referral is a constitutional requirement. The Massachusetts scheme was later amended to provide for a probable cause hearing prior to referral, however, the juvenile's referral took place prior to the amendment and he attacked the constitutionality of the earlier procedure. The court held that under the earlier statute such a hearing was not required prior to referral (347 N. E. 2d 682) :

"Having concluded that a transfer hearing could have been conducted prior to an adjudicatory hearing under the then gov-

erning statute, we now turn to the plaintiff's claim that an evidentiary or probable cause hearing on the merits of the complaint is constitutionally required before a decision to dismiss a juvenile complaint may be rendered. Although we recognize that it is permissible under *Breed* to introduce substantial evidence at the transfer hearing to show that the juvenile committed the offense in question, see *Stokes v. Commonwealth, supra* at 336 N. E. 2d 735, we do not believe that such an evidentiary showing is constitutionally mandated. The Supreme Court in *Breed* declined to express any opinion as to whether an evidentiary hearing with respect to the commission of the offense was a necessary component of a transfer hearing. It indicated that 'the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.' 421 U. S. at 537, 95 S. Ct. at 1790. See note 4 *supra.*

"A transfer hearing is not intended to resolve the issue of the juvenile's guilt or innocence, and, in fact, under *Breed*, it would be unconstitutional to do so. Rather, the Juvenile Court, at the time of this proceedings, had to determine whether it was in 'the public interest' to treat the juvenile as an adult (see G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2) by considering such factors as the amenability of the child to treatment as a juvenile, the seriousness of the alleged offense, and the necessity of safeguarding the public from the child. See note 12 *infra.* After the transfer hearing, under the then prevailing law, if jurisdiction was waived by the judge, the juvenile was entitled to a probable cause hearing on the adult complaint. This sequence was considered by then Circuit Judge Stevens to 'adequately protect a person's rights; there is no constitutional requirement that a probable cause showing must be made twice.' *United States ex rel. Bombacino v. Bensinger,* 498 F. 2d 875, 878 (7th Cir.), cert. denied, 419 U. S. 1019, 95 S. Ct. 492, 42 L. Ed. 2d 292 (1974)."

The Massachusetts court, however, did add in a footnote (347 N. E. 2d 683, note 9):

"9. Although we hold that an evidentiary hearing is not constitutionally mandated, we believe that the preferable approach, in light of the importance of a decision to transfer a juvenile, is for there to be a determination of probable cause at the transfer hearing. In this regard, as we have noted, G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1, requires a judge to make a determination, during the transfer hearing, whether probable cause exists. At this hearing, the judge should state in advance that the purpose of the hearing is to determine if probable cause exists and to decide if the juvenile should be transferred and not to conduct an adjudicatory hearing on the merits of the complaint. See *Stokes v. Commonwealth, supra* at 336 N. E. 2d 735 (Mass. Adv. Sh. [1975] at 3043-3045). This procedure raises no double jeopardy problem under *Breed* and preserves more effectively the special rights and protections granted a juvenile under our statutes."

Thus, a probable cause hearing at the time of referral is not constitutionally required, although it is required by statute in many states.

The cases cited in appellant's brief in support of his argument that a probable cause hearing is required involve detentions of juveniles without *any* probable cause hearing. For example, in Cooley v. Stone, 414 F. 2d 1213 (D. C. Cir. 1969), one of the cases cited by appellant, a 16-year-old was confined without a probable cause hearing for 16 days before finally being released on a writ of habeas corpus.

It is not disputed that a fair and reliable determination of probable cause must be provided when there is any significant pretrial restraint on liberty in a criminal proceeding. The issue is *when* such a determination must be made in a juvenile certification proceeding such as this. The appellant contends that as a matter of constitutional law, probable cause must be determined prior to referral instead of during the adult proceedings; while the state argues that the lack of a probable cause determination at the referral stage would be harmless error because a probable

cause determination is made at the adult proceedings. While a probable cause determination prior to referral may be deemed preferable, we cannot say that it is constitutionally required.

While the juvenile court is not required to find probable cause, in absence of other relevant grounds for referral, such as past record, the court can and should consider in sufficient detail the facts of the crime in order to justify a referral for adult prosecution.

■ Trial Court's Discretion in Ordering a Joint Trial.

The appellant contends the trial court abused its discretion in ordering a joint trial with the codefendant because the court neither informed him that he had a statutory right to a separate trial nor inquired whether he was aware of the possible effects of waiving this right.

Minn. St. 1974, § 631.03,[1] which was in effect at the time of the appellant's trial, provided:

"When two or more defendants shall be jointly indicted or informed against for a felony, they shall be tried separately provided, however, upon written motion, the court, in the interest of justice and not related to time or economy may order a joint trial for any two or more said defendants. In cases other than felonies, defendants jointly indicted or informed against may be tried jointly or separately, in the discretion of the court. In all cases any one or more of said defendants may be convicted or acquitted."

The record indicates that the appellant's counsel discussed the matter with him, and that the appellant expressed his desire to be tried jointly.

On this set of facts, appellant's contentions are without merit for three reasons. First, because appellant in the presence of his counsel informed the court that he consented to a joint trial and his attorney raised no objection to a joint trial, the issue can-

---

[1] Minn. St. 1974, § 631.03 was superseded by Rule 17.03, subd. 2(1), Rules of Criminal Procedure, which became effective July 1, 1975.

not be raised on appeal. State v. Bergland, 294 Minn. 558, 202 N. W. 2d 223 (1972). Second, appellant is incorrect in his contention that he had an absolute statutory right to a separate trial. The statute, as it existed prior to 1969,[2] had been construed as giving a defendant an absolute right to a separate trial. See, State v. Robinson, 271 Minn. 477, 479, 136 N. W. 2d 401, 403, certiorari denied, 382 U. S. 948, 86 S. Ct. 410, 15 L. ed. 2d 356 (1965); State v. Martineau, 257 Minn. 334, 342, 101 N. W. 2d 410, 415 (1960). The policy of this state still strongly favors separate trials, and recognizes that they should be the rule rather than the exception, State v. Swenson, 301 Minn. 199, 201, 221 N. W. 2d 706, 708 (1974). However, appellant's contention that he has an *absolute* right to a separate trial is no longer the law in Minnesota. See, State v. Swenson, *supra.* Thus, as the state contends, it would have been an incorrect statement of the law for the trial court to state to the appellant that he had an absolute right to a separate trial. Moreover, this court has disfavored the practice of having the trial court attempt to outline the strategical aspects of a separate trial where defendants are represented by counsel. See, State v. Robinson, 271 Minn. 477, 479, 136 N. W. 2d 401, 404, certiorari denied, 382 U. S. 948, 86 S. Ct. 410, 15 L. ed. 2d 356 (1965).

Finally, there is no showing in the present case that the appellant was prejudiced by being tried jointly with his codefendant. The interests of the defendants were the same, and both the appellant and his codefendant and their respective counsel agreed that a joint trial would be in the best interests of each.

■ Sufficiency of the Evidence.

The standard of review for determining sufficiency of the evidence for a jury verdict was stated by this court in State v. Ellingson, 283 Minn. 208, 211, 167 N. W. 2d 55, 57 (1969):

---

[2] Minn. St. 1967, § 631.03, provided: "When two or more defendants shall be jointly indicted for a felony, *any defendant who shall require it shall be tried separately.* In other cases defendants jointly indicted may be tried jointly or separately, in the discretion of the court, and any one or more may be convicted or acquitted." (Italics supplied.)

"It will be noted that in reviewing the sufficiency of the evidence we do not try the facts anew. Our responsibility extends no further than to make a painstaking review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt is sufficient to permit the jury to reach that conclusion. State v. Daml, 282 Minn. 521, 162 N. W. (2d) 240; State v. Keezer, 274 Minn. 292, 143 N. W. (2d) 627.

"In State v. Carmichael, 275 Minn. 148, 145 N. W. (2d) 554, and State v. Houge, 280 Minn. 372, 159 N. W. (2d) 265, this court made it clear that the weight and credibility of disputed evidence were for the jury. Furthermore, applying the standards set forth in State v. Schabert, 222 Minn. 261, 24 N. W. (2d) 846, and State v. Armstrong, 257 Minn. 295, 101 N. W. (2d) 398, this court will, upon review of the evidence in the case of a claim that it was insufficient to support the verdict, take the most favorable view of the state's testimony to which it is reasonably susceptible. In doing so, this court must assume that the jury believed the state's testimony and disbelieved that which contradicted it."

The elements of aggravated robbery are set forth in Minn. St. 609.245, which provides:

"Whoever, while committing a robbery, is armed with a dangerous weapon or inflicts bodily harm upon another is guilty of aggravated robbery and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $20,000, or both."

"Robbery" is then defined in Minn. St. 609.24 as:

"Whoever, knowing he is not entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome his resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery and may be sentenced to imprisonment for not

more than ten years or to payment of a fine of not more than $10,000, or both."

The appellant does not deny his presence at the scene of the crime. Appellant contends, however, the testimony of the victim, Dale Faulkner, the principal witness for the state, was insufficient to prove that the appellant was responsible for the assault or the property loss sustained.

The credibility of the witness, however, was clearly a question for the jury. If the jury believed Faulkner, as we must assume it did, e. g., State v. Schabert, 222 Minn. 261, 24 N. W. 2d 846 (1946), his testimony, coupled with the circumstantial evidence corroborating it, is sufficient to sustain the verdict. At the trial, Faulkner identified appellant as one of the youths who requested change and later assaulted him. On the basis of such evidence it would be difficult to hold that the evidence is insufficient to sustain the verdict.

The trial court is affirmed.