*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1454**

State of Minnesota,
Respondent,

vs.

Zakaria Abdinasser Yusuf,
Appellant.

**Filed July 20, 2015
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-13-31715

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Frederick J. Goetz, Gregory J. Young, Goetz & Eckland P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Connolly, Judge; and Kirk, Judge.

**CONNOLLY**, Judge

On appeal from his conviction of attempted second-degree intentional murder, first- and second-degree assault, and possession of a firearm by a prohibited person, appellant argues that (1) the district court erred and abused its discretion when it denied his motion to suppress the pretrial identification evidence of appellant as the shooter by the victim when it resulted from an impermissibly suggestive photo lineup and was not otherwise reliable; (2) the district court erred when it denied appellant's motion to exclude the victim's hearsay statements and photo-lineup evidence implicating appellant or "T-Dot" as the shooter; and (3) appellant's convictions must be reversed as the evidence was insufficient to prove that he was the shooter. We affirm.

## FACTS

On September 22, 2013, M.O. was standing outside of a grocery store when two men approached him. One of the men pulled a gun from his waistband and shot M.O. multiple times. A witness, L.J., called 911 and reported that the shooter was an African-American man with a tall, skinny frame, wearing a gray hooded sweatshirt. Minneapolis police officers responded to the call and found M.O. inside the store with multiple gunshot wounds.

On September 23, a sergeant interviewed M.O. in the hospital. M.O. told the sergeant that the shooter was a man he knew as "T-Dot." M.O. stated that he had known T-Dot for approximately four months prior to the shooting. The next day, the sergeant returned to the hospital and showed M.O. a photo lineup. The lineup consisted of six

individuals; two of the men were Somali, four of the men were African-American, and three of the men were wearing jail uniforms. M.O. was shown one photo at a time and, without hesitation, identified appellant Zakaria Abdinasser Yusuf as the shooter.

On September 27, the state charged appellant with one count of attempted first-degree murder in association with a criminal gang, one count of attempted first-degree murder, and one count of prohibited person in possession of a firearm. On October 9, 2013, a different sergeant conducted a photo lineup with L.J. The lineup contained the same six photos that were shown to M.O. L.J. looked at the lineup and identified photos one and two as the possible shooters, noting that "the face shape and eyes look[ed] most familiar." Appellant was the individual in photo one. On March 13, the state filed an amended complaint, amending count one to attempted first-degree murder—premeditated, amending count two to attempted second-degree murder—intentional, and adding counts three and four, felony assault in the first and second degree, respectively. Count five remained prohibited person in possession of a firearm.

On March 10, 2014, the district court held an evidentiary hearing on appellant's motions to suppress testimony regarding M.O., L.J., and another witness's photo-lineup identifications. The sergeant who initially interviewed M.O. was not available, so a second evidentiary hearing was set for the original trial date of March 17. On March 17, M.O. did not appear for trial and the district court denied the state's request for a continuance. The state subsequently dismissed the charges.

On March 25, the state located M.O. and the next day refiled the same five charges against appellant. On May 13, the district court held the second evidentiary hearing. The

3

district court denied appellant's motion to suppress M.O.'s and L.J.'s identifications of appellant from the photo lineup, but granted appellant's motion to suppress testimony regarding the other witness's photo-lineup identification.

On June 4, following a jury trial, appellant was found not guilty of attempted first-degree murder, but guilty on all other counts. The district court sentenced appellant to 219 months in prison. This appeal follows.

**DECISION**

**I.**

Appellant argues that "[t]he district court erred and abused its discretion when it denied appellant's motion to suppress the pretrial identification evidence of [a]ppellant as the shooter by the victim where it resulted from an impermissibly suggestive photo lineup and was not otherwise reliable." We disagree.

"When reviewing a district court's pretrial order on a motion to suppress evidence, 'we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo.'" *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quoting *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007)).

Appellant argues that the lineup was unnecessarily suggestive because appellant was one of two Somali men in the lineup and one of three men dressed in a jail uniform.

> In determining whether pretrial eyewitness identification evidence must be suppressed, a two-part test is applied. *Simmons v. United States*, 390 U.S. 377, 381, 88 S. Ct. 967, 969-70 (1968); *State v. Marhoun*, 323 N.W.2d 729 (Minn. 1982). The first inquiry focuses on whether the procedure was unnecessarily suggestive. *Marhoun*, 323 N.W.2d at 733. Whether a pretrial identification procedure is unnecessarily

4

suggestive turns on whether the defendant was unfairly singled out for identification. *Simmons*, 390 U.S. at 383, 88 S. Ct. at 970-71. Single photo line-up identification procedures have been widely condemned as unnecessarily suggestive. *Id.*, *Manson v. Brathwaite,* 432 U.S. 98, 104, 97 S. Ct. 2243, 2247-48 (1977). However, under the second prong of the test, the identification evidence, even if suggestive, may be admissible if the totality of the circumstances establishes that the evidence was reliable. *Manson*, 432 U.S. at 116, 97 S. Ct. at 2253-54; *State v. Bellcourt*, [312 Minn. 263, 265,] 251 N.W.2d 631, 633 (1977). If the totality of the circumstances shows the witness' identification has adequate independent origin, it is considered to be reliable despite the suggestive procedure. *Manson*, 432 U.S. at 116, 97 S. Ct. at 2253-54; *Bellcourt*, [312 Minn. at 265,] 251 N.W.2d at 633. The test is whether the suggestive procedures created a very substantial likelihood of irreparable misidentification.

*State v. Ostrem*, 535 N.W.2d 916, 921 (Minn. 1995).

Appellant argues that the lineup was unfairly suggestive because the victim identified his assailant as a Somali man, and the photo lineup only contained two photographs of Somali men, including appellant. But, not every person in a photographic display has to fit the witness's description exactly. *Seelye v. State*, 429 N.W.2d 669, 672 (Minn. App. 1988). "It is sufficient if all the people in the display bear a reasonable physical similarity to the accused." *Id.* at 672-73. Based on our review of the record, the six men included in the lineup bear a reasonable physical similarity to appellant. The men all appear to be the same age; they have similar complexions and similar builds. And, although appellant argues that the lineup was impermissibly suggestive because the victim described the assailant as Somali and appellant was one of two Somali men in the lineup, other witnesses, including L.J., identified the shooter as African American.

5

Appellant also argues that because he was wearing a jail uniform in his photo, the photo lineup was unnecessarily suggestive. Three of the individuals pictured were wearing jail uniforms, but appellant was the only Somali man wearing a jail uniform. Being the only suspect in a jail uniform does not automatically disqualify the lineup as unnecessarily suggestive. *State v. Yang*, 627 N.W.2d 666, 674 (Minn. App. 2001), *review denied* (Minn. July 24, 2001). This is true even when the suspect is one of the only people in the lineup wearing such a uniform. *State v. Duncan*, 312 Minn. 17, 21-22, 250 N.W.2d 189, 193-94 (1977) (upholding as not unnecessarily suggestive a lineup where the two defendants were the only two dressed in jail uniforms). Consequently we conclude that the district court did not err by determining that the photo lineup was not unnecessarily suggestive.

Furthermore, even if the identification were unnecessarily suggestive, the totality of the circumstances indicates that M.O.'s photo-lineup identification of appellant had an adequate independent origin. Under the second prong of the *Ostrem* test, the evidence is admissible if the totality of the circumstances shows that the witness's identification has an adequate independent origin. *Ostrem*, 535 N.W.2d at 921. We consider five factors to evaluate the totality of the circumstances:

> 1. The opportunity of the witness to view the criminal at the time of the crime;
> 2. The witness'[s] degree of attention;
> 3. The accuracy of the witness'[s] prior description of the criminal;
> 4. The level of certainty demonstrated by the witness at the [identification procedure];
> 5. The time between the crime and the confrontation.

6

*Id.* (quotation omitted).

When M.O. spoke with a sergeant after the shooting, he identified appellant as the shooter. He stated that he had been an arm's length away from the shooter, and that appellant "took a gun out of his waistband, looked him right in the eye, raised the gun up and started firing." This description illustrates M.O.'s high degree of attention. Additionally, M.O. identified the shooter as T-Dot and explained that he had known T-Dot for approximately four months prior to the shooting. After viewing the photo lineup, M.O. did not have any difficulty picking out appellant's photograph and identifying him as the shooter. Therefore, we conclude that the district court did not err by denying appellant's motion to suppress the photo lineup.

## II.

Appellant argues that "[t]he district court erred when it denied appellant's motion to exclude [M.O.'s] hearsay statements and photographic lineup evidence implicating [appellant] as the shooter." We disagree.

The district court admitted M.O.'s pretrial identifications of appellant under Minn. R. Evid. 807 as substantive evidence. The district court's evidentiary rulings will generally not be reversed absent a clear abuse of discretion. *State v. Flores*, 595 N.W.2d 860, 865 (Minn. 1999). Hearsay is generally inadmissible under Minn. R. Evid. 802, but Minn. R. Evid. 807, the residual-hearsay exception, provides:

> A statement not specifically covered by rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the

7

point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The district court concluded that the out-of-court identification was offered as evidence of a material fact, namely the identification of the shooter. It also concluded that M.O.'s identification is more probative on this point because he is the only witness who could identify appellant by the name T-Dot, which is supported by the record. Additionally, M.O. is the only witness who claimed to have previously known appellant and who was in close proximity with him during the shooting. By admitting the statement, we agree with the district court that the jury could better evaluate the reliability of the out-of-court statement against the in-court statement.

A totality-of-the-circumstances analysis is used to determine whether the hearsay had circumstantial guarantees of trustworthiness equivalent to Minn. R. Evid. 803 and 804:

> In particular, the court should generally consider the following factors in evaluating trustworthiness: [(1)] whether the statement was given voluntarily, under oath, and subject to cross-examination and penalty of perjury; [(2)] the declarant's relationship to the parties; [(3)] the declarant's motivation to make the statement; [(4)] the declarant's personal knowledge; [(5)] whether the declarant ever recanted the statement; [(6)] the existence of corroborating evidence; and [(7)] the character of the declarant for truthfulness and honesty.

*State v. Griffin*, 834 N.W.2d 688, 693 (Minn. 2013) (quotation omitted). M.O. testified at trial, admitted making the statement, and was available for cross-examination. Although

8

the statement was not made against his penal interest, the district court concluded that his statements were against his interest based on his hostility towards the prosecution. *See State v. Whiteside*, 400 N.W.2d 140, 146 (Minn. App. 1987) (noting that a statement was trustworthy under the residual hearsay exception because the statement was made against the declarant's interest based on her hostility towards the prosecution), *review denied* (Minn. Mar. 18, 1987). The record shows that M.O. was a reluctant witness and did not cooperate with the prosecution. The district court issued a bench warrant for his arrest when he did not appear for the first trial date. When he appeared for the second trial date, M.O. recanted his prior statements to police and his identification of appellant. Additionally, the prior statement is consistent with other evidence of guilt, including the type of clothing appellant was wearing. Within hours of being shot, M.O. repeated the statement that T-Dot shot him several times and confirmed that appellant is the man he knows as T-Dot. We conclude that the district court did not err by admitting the statements and the photo-lineup identification under the residual hearsay exception.

## III.

Appellant argues that his "convictions should be reversed as the evidence was insufficient to prove beyond a reasonable doubt that he was the shooter." Again, we disagree.

In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court

9

must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). This is especially true when resolution of the matter depends mainly on conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offenses. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Appellant was convicted of attempted second-degree intentional murder in violation of Minn. Stat. § 609.19, subd. 1(1) (2012), first-degree assault in violation of Minn. Stat. § 609.221, subd. 1 (2012), second degree assault in violation of Minn. Stat. § 609.222, subd. 1 (2012), and possession of a weapon by a prohibited person in violation of Minn. Stat. § 624.713, subd.1(2) (2012). A person is guilty of second-degree intentional murder if the person "causes the death of a human being with intent to effect the death of that person or another, but without premeditation." Minn. Stat. § 609.19, subd. 1(1). A person may be found guilty of an attempt to commit a crime if that person "with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime." Minn. Stat. § 609.17, subd. 1 (2012). "An attempt requires that the actor have specific intent to perform acts and attain a result which if accomplished would constitute the crime alleged." *State v. Noble*, 669 N.W.2d 915, 919 (Minn. App. 2003), *review denied* (Minn. Dec. 23, 2003). A person is guilty of first-degree assault if he intentionally causes another great bodily harm. Minn. Stat.

10

§ 609.221, subd. 1. A person is guilty of second-degree assault with a dangerous weapon if he assaults another with a dangerous weapon. Minn. Stat. § 609.222, subd. 1. A person is guilty of being a prohibited person in possession of a firearm if he knowingly possessed a firearm and had been convicted of a crime of violence.[1]

At trial, an officer testified that he spoke with M.O. at the hospital on the night of the shooting. M.O. told him that he was standing in front of a store when two men approached him. One of the men, who M.O. knew as T-Dot, produced a gun and shot M.O. The officer testified that M.O. definitely said T-Dot, and not T-Dawg, as M.O. testified at trial. M.O. told the officer that T-Dot started firing the gun at him and that T-Dot was wearing a gray hooded sweatshirt. L.J. also testified that the man she saw shoot M.O. was wearing a gray hooded sweatshirt.

A sergeant also testified that he spoke with M.O. at the hospital following the shooting. M.O. told the sergeant that he had known T-Dot for four months. The sergeant also spoke with M.O. the following day and showed M.O. the photo lineup. M.O. picked out appellant's picture without hesitation and stated "That's the guy who shot me; that's T-Dot."

At trial, M.O. stated that the officers misunderstood what he said, and that someone named T-Dawg actually shot him. But another witness testified that appellant is known as T-Dot. M.O. also remembered viewing the photo lineup but stated that the person he identified in the lineup was not the person who shot him. But, we must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary."

---

[1] Appellant stipulated to the prior conviction.

11

*Moore*, 438 N.W.2d at 108.  Based on the evidence presented at trial, we conclude that there is sufficient evidence in the record to convict appellant of the charged offenses.

**Affirmed.**